STATE of Wisconsin, Plaintiff-Respondent,

v.

William G. JOHNSON, Defendant-Appellant.

Supreme Court

*No. 99–2968–CR. Oral argument February 5, 2001.—Decided May 30, 2001.*

2001 WI 52

(Also reported in 627 N.W.2d 455.)

For the defendant-appellant there were briefs and oral argument by *Martha K. Askins*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1.  DIANE S. SYKES, J.  This case presents a constitutional challenge to the statute making it a crime to engage in repeated acts of sexual assault of the same child, Wis. Stat. § 948.025 (1997–98).[1] The defendant challenges the provision in the statute that relieves the jury of any requirement of unanimity as to the specific individual acts of sexual assault that combine to constitute the crime, as long as it unanimously agrees that the defendant committed the minimum number required, to wit, at least three.

¶ 2.  The statute previously survived a unanimity challenge under the state constitution in *State v. Molitor*, 210 Wis. 2d 415, 565 N.W.2d 248 (Ct. App. 1997). In *Molitor*, the court of appeals concluded that the statute's requirement of jury unanimity on the existence of a continuing course of sexually assaultive conduct satisfied the defendant's right to a unanimous verdict, even though unanimity is not required as to each discrete act of sexual assault comprising the course of conduct. Then came *Richardson v. United States*, 526 U.S. 813 (1999), in which the United States Supreme Court held that to convict a defendant under the federal "continuing criminal enterprise" drug statute, the jury must unanimously agree on the specific underlying drug code violations that comprise the "continuing criminal enterprise". *Id.* at 815.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 3. After *Molitor* but before *Richardson*, the defendant in this case, William G. Johnson, was convicted under Wis. Stat. § 948.025 for repeated sexual assault of the same child, after a trial in which the state introduced evidence of more than three separate acts of sexual assault against the same victim. On postconviction motion and appeal, Johnson argued that *Molitor* cannot survive *Richardson*, and since the jury in his case had not been instructed that it must be unanimous on the specific predicate acts of sexual assault that comprised the crime, his right to a unanimous verdict had been violated. The court of appeals certified the case to us.[2] We conclude that *Molitor* survives *Richardson*, and under the state and federal constitutional analyses in both cases, the statute is constitutional. Accordingly, we affirm the circuit court's denial of the motion for a new trial.

I

¶ 4. Johnson was charged with repeated sexual assault of the same child in violation of Wis. Stat. § 948.025 arising out of a series of incidents involving Roshunda R., who was 14 years old when the incidents

---

[2] The court of appeals stated the question on certification as follows:

Does *State v. Molitor*, 210 Wis. 2d 415, 421–23, 565 N.W.2d 248 (Ct. App. 1997), holding that a jury need only unanimously agree that three or more sexual assaults constitute a "continuing course of conduct" to support a conviction of repeated sexual assault of a child contrary to WIS. STAT. § 948.025 (1997–98), survive *Richardson v. United States*, 119 S. Ct. 1707 (1999), holding that a jury must also unanimously agree on the specific violations included in the "continuing course of conduct?"

occurred.[3] At trial, Roshunda testified that she used to live across the street from Johnson's girlfriend and that she would sometimes play with his girlfriend's children. Roshunda testified that during the summer of 1997, Johnson touched her sexually a number of times. The first of these sexual contacts occurred on a day in July 1997, when a person Roshunda knew as "Marianne" got in trouble with the police; a detective's testimony determined this date to be July 8, 1997. Roshunda was on Johnson's porch that evening with a number of other people, and Johnson touched her chest over her clothes. When she moved to a different spot on the porch, Johnson followed her and touched her again on her chest and "butt."

¶ 5. Roshunda also testified about a separate incident that occurred later that summer, on a day when her family returned to Kenosha from Waukegan, Illinois, where they were living at the time. Roshunda's mother established this date as August 21, 1997. Roshunda testified that while she and her sister were visiting at Johnson's house on that day, Johnson touched her on her breast and "bottom." When she tried to leave the house, Johnson asked her for a hug and a kiss and then hit her "bottom" as she was going out the door.

¶ 6. Roshunda also testified about a game of tag that occurred sometime in July 1997. She said that during the game of tag, Johnson caught her from behind and touched her chest, "butt," and vagina.

¶ 7. At the conclusion of the trial, the Kenosha County Circuit Court, the Honorable Michael S.

---

[3] Johnson was also charged with second-degree sexual assault for conduct relating to Andrea V. The jury acquitted him on this count.

Fisher, instructed the jury on the elements of the crime of repeated sexual assault of the same child:

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfied you beyond a reasonable doubt, that the following three elements were present.
>
> The first element requires that the defendant committed three or more sexual assaults of Roshunda. In this case, the sexual assaults are alleged to have involved sexual contact.
>
> . . .
>
> The second element requires that Roshunda had not attained the age of 16 years at the time of each act of sexual contact.
>
> . . .
>
> The third element requires that at least three of the alleged sexual assaults took place from a specific period of time. The specific period of time is from July 1, 1997 through August 21, 1997.

¶ 8. This instruction derives from the pattern jury instruction applicable to this crime. *See* Wis JI—Criminal 2107. However, the circuit court did not read the entire instruction to the jury, but, rather, omitted the part of the instruction recommended for use in cases in which evidence of more than three acts of sexual assault has been admitted. That section of the pattern instruction paraphrases Wis. Stat. § 948.025(2) and tells the jury: "Before you may find the defendant guilty, you must unanimously agree that at least three sexual assaults occurred. . .but you need not agree on which acts constitute the required three." Johnson was convicted and sentenced to ten years in prison.

¶ 9. Johnson moved for a new trial, arguing that his right to a unanimous verdict had been violated

because the State introduced evidence of more than the minimum number of sexual assaults required to constitute the crime, but the jury was not instructed that it had to agree unanimously on the specific acts of sexual assault before convicting him. *Johnson* argued that *Richardson*, decided after his trial, called into question the constitutionality of Wis. Stat. § 948.025 because the statute specifically allows conviction in the absence of jury unanimity on the individual acts of sexual assault that make up the crime. The circuit court denied the postconviction motion, concluding that *Richardson* was distinguishable from *Molitor*. Johnson appealed, and the court of appeals certified the case to us.

## II

¶ 10. The constitutionality of a statute is a question of law that this court reviews without deference to the lower courts. *State v. Randall*, 192 Wis. 2d 800, 824, 532 N.W.2d 94 (1995). Statutes are presumed to be constitutional. *Gloria A. v. State*, 195 Wis. 2d 268, 276, 536 N.W.2d 396 (Ct. App. 1995). A statute will not be invalidated unless it has been proven unconstitutional beyond a reasonable doubt. *Bachowski v. Salamone*, 139 Wis. 2d 397, 404, 407 N.W.2d 533 (1987). The party challenging a statute's constitutionality bears the burden of overcoming the strong presumption in favor of the statute's validity. *State v. Borrell*, 167 Wis. 2d 749, 762, 482 N.W.2d 883, 887 (1992).

¶ 11. The Wisconsin Constitution's guarantee of the right to trial by jury includes the right to a unanimous verdict with respect to the ultimate issue of guilt

or innocence. Wis. Const., art. I, §§ 5[4] and 7;[5] *State v. Derango*, 2000 WI 89, ¶ 13, 236 Wis. 2d 721, 731, 613 N.W.2d 833. To say that the jury must be unanimous, however, does not explain what the jury must be unanimous about. For this we look to the statutory language defining the crime and its elements. "The principal justification for the unanimity requirement is that it ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense." *Derango* at ¶ 13 (quoting *State v. Lomagro*, 113 Wis. 2d 582, 591, 335 N.W.2d 583 (1983)). Thus, while jury unanimity is required on the essential elements of the offense, when the statute in question establishes different modes or means by which the offense may be committed, unanimity is generally not required on the alternate modes or means of commission. *Derango*, 2000 WI at ¶¶ 13–14.

---

[4] Article I, Section 5, Trial by jury; verdict in civil cases, states:

> Section 5. The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

[5] Article I, Section 7, Rights of accused, states:

> Section 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

¶ 12.   Ordinarily, then, the first step in a unanimity challenge is an examination of the language of the statute in order to determine the elements of the crime and whether the legislature has created a single offense with multiple or alternate modes of commission. *Derango*, 2000 WI at ¶ 14. "The point is to determine legislative intent: did the legislature intend to create multiple, separate offenses, or a single offense capable of being committed in several different ways?" *Id.* at ¶ 15. For example, where the legislature has specified that any of several different mental states will satisfy the intent or mens rea element of a particular crime, unanimity is not required on the specific alternate mental state as long as the jury unanimously agrees that the state has proven the intent element beyond a reasonable doubt. *Id.* at ¶¶ 23–25.

¶ 13.   Federal constitutional due process considerations, however, limit the state's ability to define a crime so as to dispense with the requirement of jury unanimity on the alternate means or modes of committing it. *Richardson*, 526 U.S. at 820 (citing *Schad v. Arizona*, 501 U.S. 624, 632–33 (1991) (plurality opinion) and *Id.* at 651 (Scalia, J., concurring); *Derango*, 2000 WI at ¶ 22 (citing *Schad*, 501 U.S. at 635). So the second step in the analysis is an evaluation of whether the lack of jury unanimity on the alternate means or modes of commission violates due process. *Derango*, 2000 WI at ¶ 22. This involves an inquiry into the fundamental fairness and rationality of the legislative choice, starting, however, with a presumption that the legislature has made its determination fairly and rationally. *Id.* As we noted in *Derango*, the due process fundamental fairness and rationality test for unanim-

ity challenges was established by the Supreme Court in *Schad* and focuses on historical practice and the relative moral and conceptual equivalence of the alternate modes or means of committing the crime. *Id.*

¶ 14. The statute in question here does not present a difficult issue of statutory interpretation. The language of Wis. Stat. § 948.025 is unambiguous as to the elements of the offense and the question of what the jury must be unanimous about before convicting a defendant of repeated sexual assault of the same child:

> **948.025 Engaging in repeated acts of sexual assault of the same child. (1)** Whoever commits 3 or more violations under s. 948.02(1) or (2) [first and second degree sexual assault of a child] within a specified period of time involving the same child is guilty of a Class B felony.
>
> **(2)** If an action under sub. (1) is tried to a jury, in order to find the defendant guilty the members of the jury must unanimously agree that at least 3 violations occurred within the time period applicable under sub. (1) but need not agree on which acts constitute the requisite number.

¶ 15. It is clear from this language that the predicate acts of sexual assault are not themselves elements of the offense, about which the jury must be unanimous before convicting the defendant. Rather, to convict under this statute, the jury need only unanimously agree that the defendant committed at least three acts of sexual assault of the same child within the specified time period. Where evidence of more than three acts is admitted, the jury need not unanimously agree about the underlying acts as long as it unanimously agrees that the defendant committed at least three.

¶ 16. In other words, it is the *course* of sexually assaultive conduct that constitutes the primary ele-

375

ment of this offense, about which the jury must be unanimous (the second and third elements are the age of the victim and the timing of the acts). *See* Wis JI—Criminal 2107. Unanimity is explicitly *not* required regarding the individual acts of sexual assault.

¶ 17. This brings us to the question of whether dispensing with unanimity on the predicate acts that comprise the course of conduct element of this offense is consistent with federal due process under *Derango* and *Schad*. This also is not a difficult question. This statute was enacted in 1993, and, therefore, like the statute at issue in *Derango*, "does not have a lengthy history to look to as an indicia of what is acceptable as fundamentally fair; but *Schad* recognized that this might often be the case with modern criminal statutes." *Derango*, 236 Wis. 2d at 738 (citing *Schad*, 501 U.S. at 640, n. 7). Nevertheless, Wisconsin has historically held that in "continuing course of conduct" crimes, the requirement of jury unanimity is satisfied even where the jury is not required to be unanimous about which specific underlying act or acts constitute the crime. *See Lomagro*, 113 Wis. 2d at 589; *State v. Giwosky*, 109 Wis. 2d 446, 451, 326 N.W.2d 232 (1982).

¶ 18. Furthermore, the predicate acts of first- and second-degree sexual assault that combine to establish the required course of conduct under Wis. Stat. § 948.025 are basically morally and conceptually equivalent. There is, of course, a distinction in victim age and maximum penalty as between first- and second-degree sexual assault of a child: the former involves victims under age 13 and carries a 40-year confinement maximum; the latter involves victims under age 16 and carries a 20-year confinement maxi-

mum. *See* Wis. Stat. § 948.02(1) and (2). And different types of sexual conduct—from sexual intercourse to various forms of sexual contact—can be implicated in either offense. *See* Wis. Stat. §§ 948.02(1) and (2), 948.01(5) and (6). But these variations are not of such a degree or nature as to call into question the basic moral and conceptual equivalence of first- and second-degree sexual assault of a child. Lack of jury unanimity regarding the specific acts constituting the required minimum of three raises no concern about fundamental fairness under these circumstances.

¶ 19.  After all, the violations of the law about which the jury need not be unanimous under this statutory scheme all involve the sexual abuse of children, crimes of the same or similar nature and level of culpability. It is therefore not unfair or irrational to lift the requirement of jury unanimity as to the specific underlying acts as long as unanimity is required regarding the existence of the course of conduct, defined as at least three acts of sexual assault of the same child.

¶ 20.  This is essentially the same conclusion the court of appeals reached in *Molitor*, although it did not engage in the *Schad* due process analysis as we have just done. In *Molitor*, the defendant was charged under Wis. Stat. § 948.025 with engaging in sexual intercourse with a 15-year-old girl "on more than three occasions between April 1 and May 21, 1995." *Molitor*, 210 Wis. 2d at 418. Molitor pleaded no contest to the charge and was sentenced to a 20-year prison term.

¶ 21.  On appeal, Molitor attacked the constitutionality of Wis. Stat. § 948.025 on unanimity grounds. The court of appeals rejected the defendant's argument and upheld the statute, citing our "continuing course of conduct" cases, *Giwosky* and *Lomagro*:

The supreme court in *State v. Giwosky* concluded that when the charged behavior constitutes "one continuous course of conduct," the requirement of jury unanimity is satisfied regardless of whether there is agreement among jurors as to "which act" constituted the crime charged. (Emphasis omitted). While the course of conduct in *Giwosky* was a "short continuous incident that can not be factually separated," the court later clarified in *State v. Lomagro* that the duration of the course of conduct was not "legally significant." The unanimity requirement is met where multiple acts can be said to constitute "one continuous, unlawful event and chargeable as one count."

The question in *Lomagro* was whether the aggregation of multiple, conceptually similar acts in a single charged crime was constitutionally permissible as an act of prosecutorial discretion. The language of § 948.025, Stats., plainly shows that the legislature intended to create a single crime, the repeated sexual assault of the same child within a specified time period. The question before us, then, is whether the legislature may, like prosecutors, aggregate conceptually similar acts in a single "course of conduct" crime, albeit for acts committed over an indefinite, and presumably longer, period of time. We conclude that it may.

*Molitor*, 210 Wis. 2d at 420–421 (citations omitted).

¶ 22.   Johnson argues that the Supreme Court's decision in *Richardson* abrogates *Molitor* on due process grounds. We disagree. In *Richardson*, the Supreme Court evaluated a unanimity challenge to the federal "continuing criminal enterprise" statute[6] in light of the statute's language and the due process con-

---

[6] 21 U.S.C § 848(c) (1994) says, in pertinent part:

[A] person is engaged in a continuing criminal enterprise if—

siderations articulated in its decision in *Schad*. The statute, 21 U.S.C. § 848(a) (1994), defines a "continuing criminal enterprise" (CCE) as a "continuing series of violations" of federal drug laws undertaken by an "organizer" or "supervisor" of the enterprise, in concert with at least five other persons, and from which the defendant derives substantial income. *See* 21 U.S.C § 848(c) (1994). The district court instructed the jury that it must "unanimously agree that the defendant committed at least three federal narcotics offenses," adding that "[y]ou do not. . .have to agree as to the particular three or more federal narcotics offenses committed by the defendant." The defendant was convicted.

¶ 23.   The Supreme Court reversed, holding that to convict under the CCE, the jury must be unanimous not only on the question of whether the defendant committed a "continuous series of violations" of the federal drug laws, but also on the specific "violations" that make up the continuing series. In reaching this conclusion, the Court focused on the language of the statute, historical tradition, and the potential for unfairness. *Richardson*, 526 U.S. at 818–20. That is, the Court initially engaged in an exercise of statutory interpreta-

---

(1)     he violates any provision of [the federal drug laws, i.e.,] this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2)     such violation is a part of a continuing series of violations of [the federal drug laws, i.e.,] this subchapter or subchapter II of this chapter—

    (A)     which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer [or supervisor or manager] and

    (B)     from which such person obtains substantial income or resources.

tion, and then applied the due process test articulated in *Schad*.

¶ 24.   The Court concluded that the CCE statute's use of the word "violation" to describe the constituent parts of the course of conduct required to comprise the "continuing series" was a legal term of art, and meant that Congress intended each violation to be treated as an element of the offense. *Richardson*, 526 U.S. at 818–19. Furthermore, the Court concluded that the breadth of the violations that could potentially qualify as part of the series under the statute—ranging from civil penalties for removing drug labels, to simple criminal possession, to endangering human life while manufacturing a controlled substance and possession with intent to deliver large quantities of drugs—raised due process concerns. The Court noted that the federal drug code encompassed "many different kinds of behavior of varying degrees of seriousness," and that this breadth would aggravate the danger of unfairness if the jury were not required to be unanimous about the predicate acts making up the continuing criminal enterprise. *Id.* at 819. The Court identified two principal concerns: first, by treating predicate violations simply as alternate means of committing the crime, jurors could avoid the specific factual details of each violation and thus cover up potential disagreements about what the defendant did or did not do; second, unless jurors were required to focus on specific factual detail, they might conclude "that where there is smoke there is fire." *Id*

¶ 25.   Applying the Supreme Court's analysis in *Richardson* to Wis. Stat. § 948.025 does not require us to overrule *Molitor* or invalidate the statute. To the contrary, as we have set forth above, an examination of the statute's language and an application of the *Schad*

due process test for fundamental fairness and rationality yields the same conclusion as that reached in *Molitor*. Unlike the federal CCE statute at issue in *Richardson*, Wis. Stat. § 948.025 plainly does not designate the predicate acts of sexual assault as elements of the offense of repeated sexual assault of a child, about which the jury must be unanimous. Rather, the statute explicitly excludes the predicate acts from any unanimity requirement. As such, and in contrast to *Richardson*, no exercise in statutory interpretation is necessary here.

¶ 26. Furthermore, as we have discussed at length above, the risk of unfairness in dispensing with unanimity on the predicate acts under this statute is not present as it was in *Richardson*. The range of crimes included as predicate acts under the CCE, totaling approximately 90 numbered sections of the federal criminal code and covering minor civil drug offenses as well as major drug felonies, is far greater than the two types of sexual assault of a child included as predicate acts under Wis. Stat. § 948.025. In *Richardson* there was insufficient moral equivalence and conceptual similarity in the 90 or so predicate drug crimes included within the ambit of the CCE to sustain an interpretation of the statute that would permit nonunanimity on the predicate acts. Here, the predicate acts of first- and second- degree sexual assault of a child are sufficiently equivalent to justify the legislature's decision to dispense with unanimity on the predicate acts.

¶ 27. Finally, the Supreme Court in *Richardson* specifically noted that state statutes pertaining to child sexual assault are distinguishable under its analysis:

> The closest analogies [the federal government] cites consist of state statutes making criminal such

381

crimes as sexual abuse of a minor. State courts interpreting such statutes have sometimes permitted jury disagreement about a "specific" underlying criminal "incident" insisting only upon proof of a "continuous course of conduct" in violation of the law. . . .The state practice may well respond to special difficulties of proving individual underlying criminal acts, which difficulties are absent here. . . .The cases are not federal but state, where this Court has not held that the Constitution imposes a jury unanimity requirement. And their special subject matter indicates that they represent an exception; they do not represent a general tradition or a rule.

*Richardson*, 526 U.S. at 821–22 (citations omitted). That the Supreme Court excluded this type of state statute from its analysis in *Richardson* supports our conclusion that *Molitor* has not been abrogated, and Wis. Stat. § 948.025 is not unconstitutional on unanimous verdict or due process grounds.

¶ 28. Accordingly, we conclude that Johnson has not overcome the presumption of constitutionality that attends the legislative determination to dispense with a unanimity requirement for the individual acts of child sexual assault that comprise the crime of repeated sexual assault of the same child. Under the state and federal constitutional analyses of *Molitor*, *Richardson*, and *Schad*, Wis. Stat. § 948.025 does not violate due process or the right to a unanimous verdict. We affirm the order of the circuit court denying Johnson's motion for a new trial.

*By the Court.*—The order of the circuit court for Kenosha County is affirmed.

¶ 29. ANN WALSH BRADLEY, J. *(dissenting)*. The case before us presents two constitutional challenges to Wis. Stat. § 948.025(2). The defendant's challenges are grounded in different constitutions and implicate different bodies of law. I believe a properly conceived and applied Fourteenth Amendment due process inquiry, guided by the principles enunciated in *United States v. Richardson*, 526 U.S. 813 (1999), requires that § 948.025(2) be declared unconstitutional. I also believe that by undermining established Wisconsin precedent, the majority obfuscates the guarantee of a unanimous jury verdict provided by Article I, Sections 5 and 7 of our state constitution. Accordingly, I respectfully dissent.

¶ 30. Under § 948.025(2), a jury need not agree on the individual offenses that comprise the crime of repeated acts of sexual assault of a child. Our court of appeals previously addressed this statute in *State v. Molitor*, 210 Wis. 2d 415, 565 N.W.2d 248 (Ct. App. 1997). In certifying this case for our review, however, the court of appeals acknowledged the deficiencies of its analysis in *Molitor*, in particular its failure to take into account the considerations of fairness required by due process under *Richardson*:

> We did not conduct such a detailed analysis [as presented by *Richardson*] in *Molitor*. . . .[O]ur analysis of the language was cursory at best and was done without the benefit of the reasoning in *Richardson*. . . . In addition, we did not consider the potential for unfairness, particularly whether treating the violations as a "series" would permit widespread disagreement among the jurors to go unnoticed or permit jurors to simply conclude from the testimony that where there is smoke there is fire.

Despite these recognized deficiencies, the majority reaffirms the *Molitor* analysis. In the process, it rejects the controlling authority of *Richardson* and the considerations of fairness necessitated by due process. The majority, in addressing both constitutional challenges, endorses the *Molitor* analysis and thus succumbs to the same shortcomings.

¶ 31. I turn first to the Fourteenth Amendment due process challenge. The majority concludes that § 948.025(2) clears the hurdle of the due process limitation on the legislature's power to define crimes in a manner that allows the jury to disagree as to means in which the crime was committed. It hinges its conclusion on an analysis into history and the relative "moral and conceptual equivalence" of the predicate offenses that constitute a violation of § 948.025. However, even the most cursory review of the relevant United States Supreme Court precedent reveals that the due process analysis required by the Fourteenth Amendment cannot be collapsed into the two-part inquiry advanced by the majority.

¶ 32. In clinging to its formulaic two-part test, the majority has abandoned the Supreme Court's guidance in defining the limits of due process and ignores the critical inquiries required by *Schad v. Arizona*, 501 U.S. 624 (1991) and *Richardson*. In *Schad*, the Supreme Court first scrutinized a statutory definition of an offense that allows jury disagreement and concluded that such a statute is subject to the due process demands of fundamental fairness and rationality. 501 U.S. at 637. A plurality of the Court offered guideposts that emphasized the demands for fairness and rationality, advancing an inquiry into the "history and wide practice as guides to fundamental values" as well as the "moral and practical equivalence" of the alternative

means of committing the crime. *Id.* at 637–38. Justice Scalia, who provided the fifth vote on the due process question in *Schad,* offered an analysis that focused on historical practice, criticizing the plurality's creation of a moral equivalence requirement. *Id.* at 651 (Scalia, J., concurring).

¶ 33.  In construing the federal statute at issue in *Richardson,* the Supreme Court explained that it was guided by the constitutional limits on a state's "power to define crimes in ways that would permit juries to convict while disagreeing about means." 526 U.S. at 820. Harmonizing the plurality and concurring opinions of *Schad* for the first time, the Court explained that the state exceeds the limitations imposed by due process when its definition of a crime "risks serious unfairness and lacks support in history or tradition." *Id.*

¶ 34.  A proper consideration of the risk of unfairness, history, and tradition must lead to the conclusion that § 948.025(2) exceeds the limits of due process. Because *Richardson* represents the analysis approved. by a majority of the United States Supreme Court in an analogous case, today's majority is remiss in not adhering to that analysis. Instead, it dismisses *Richardson* and concludes that "the risk of unfairness in dispensing with unanimity. . .is not present as it was in *Richardson.*" Majority op. at ¶ 26.

¶ 35.  There is no doubt that removal of the requirement of jury unanimity as to the predicate offenses that comprise the crime of repeated sexual assaults of the same child risks serious unfairness. The risk of unfairness, as identified by the *Richardson* Court, is twofold. First, there is the risk that absence of a requirement that the jury agree on the particular acts committed "will cover up wide disagreement

among the jurors about just what the defendant did, or did not, do." *Richardson*, 526 U.S. at 819.

¶ 36. Section 948.025(2) epitomizes this risk. In a case where a sufficiently high number of sexual assaults are alleged, a jury could conceivably convict a defendant without any two jurors agreeing as to the predicate violations of § 948.02(1) or (2) that they believe the defendant committed. Even in the ordinary case, § 948.025(2) will mask juror disagreement as to which offenses the defendant actually committed.

¶ 37. As a practical matter, allowing such juror disagreement amounts to little more than an abrogation of the State's burden of proof for each individual predicate offense through the creation of a "continuous course of conduct crime." The State is no longer required to convince all twelve jurors beyond a reasonable doubt that the defendant committed a specific act of sexual assault. Rather, the State need only convince some jurors that the defendant committed acts A, B, and C; other jurors may find that the defendant committed acts D, E, and F. Where no valid conviction for a single individual act could otherwise stand because of the lack of jury agreement, the defendant may nonetheless be convicted under § 948.025.

¶ 38. Ironically, the State itself provides the strongest argument illustrating the unfairness posed by § 948.025(2). The state candidly advances in its brief that the prosecution in this case pursued a conviction under § 948.025 because of the difficulties of proving the individual instances of assault:

> [T]he prosecutor must have believed there would be problems proving up the individual sexual assaults or else there would have been no reason to charge

Johnson with a single violation of § 948.025 rather than with multiple violations of § 948.02(2).

The state's position leads me to ask, much like the *Richardson* Court asked when presented with a similar argument premised on the alleged difficulty in establishing the predicate offenses: Does the difficulty in proving the individual specific offenses not tend to cast doubt upon the very existence of the requisite "course of conduct"? *See Richardson*, 526 U.S. at 823.

¶ 39.   The second risk of unfairness posed by the abrogation of the requirement of unanimity is that by not requiring the jurors to focus upon specific factual details the jury may conclude that "where there is smoke there is fire." *Richardson*, 526 U.S. at 819. In other words, when presented with numerous allegations of sexual assault, but relieved of the obligation of finding that three particular assaults occurred beyond a reasonable doubt, the jury will convict out of a belief that there must have been at least three sexual assaults.

¶ 40.   While both of these risks of unfairness, which were set forth by the Supreme Court in *Richardson*, are present under § 948.025(2), the majority brushes them aside. The majority instead rests on its inquiry into "moral and conceptual equivalence" of the predicate offenses about which the jurors are permitted to disagree. Unfortunately, the majority's analysis, which concludes that similar crimes may be grouped together as a "continuous course of conduct" crime under which the requirement of jury unanimity may be eliminated, misses the mark. The inquiry does little to reflect on the overall unfairness of allowing a jury to disagree entirely on which criminal acts serve as the basis for conviction. The similarity of the underlying offenses is no substitute for the requisite proof and

agreement that the offenses were actually committed by the defendant.

¶ 41.    While I would conclude that the risk of serious unfairness alone defeats the constitutionality of § 948.025(2), I note that the statute lacks support in both tradition and history. There is no tradition in the law supporting the constitutionality of a statute that defines an offense in a manner which allows jurors to wholly disagree as to the acts comprising the offense. Indeed, the *Richardson* Court noted that the law reflects a competing tradition: the "tradition of requiring juror unanimity where the issue is whether a defendant has engaged in conduct that violates the law." 526 U.S. at 819.

¶ 42.    Additionally, there is no historical support for an offense that allows juror disagreement in the manner of § 948.025(2). The majority gives this inquiry short shrift, concluding that because the statute is a recent creation, history is not a relevant inquiry into its constitutionality. The *Schad* plurality noted the "obvious proposition" that modern statutory offenses lacking support in the common law may not necessarily be tested by the "yardstick" of history. 501 U.S. at 640 n.7. However, this should not end the inquiry. The majority could, but does not, acknowledge that there is no analog in American legal history to the statutory abrogation of the requirement of jury unanimity presented in this case.

¶ 43.    The lack of a historical antecedent invites an inquiry into the widespread contemporary acceptance of a particular practice.[1] Indeed, the plurality opinion in *Schad*, to which the majority clings, featured

---

[1] "[F]or those portions of the process that were added in more recent times, and therefore lack strong historical traditions, widespread acceptance of a particular practice speaks

an inquiry into the widespread use as an indicator of fundamental fairness and rationality. 501 U.S. at 640–643. Had the majority conducted an inquiry into the practices of other states, it would have been forced to acknowledge that only five other states have such statutory provisions.[2] Moreover, it would have noted that Wis. Stat. § 948.025 is perhaps the most expansive of the few state statutes that relieve the requirement of jury unanimity in this context. Unlike Wisconsin, the few other states that do provide for such a statute limit the statute's breadth, through limitations on the circumstances of the assaults and on the timeframe during which the offenses must occur. Thus comparing § 948.025(2) to the practice of other states, it cannot be said that the removal of jury unanimity as to the predicate offenses under § 948.025(2) is supported by widespread practice.[3]

---

strongly in favor of its constitutionality." 1 Wayne R. LaFave et al., *Criminal Procedure* § 2.7(b) (2d ed. 1999).

[2] *See* Ariz. Rev. Stat. Ann. § 13–1417 (West 2000); Cal. Penal Code § 288.5 (West 2000); Del. Code Ann. tit. 11, § 778 (2000); Haw. Rev. Stat. Ann. § 707–733.5 (Michie 1999); N.D. Cent. Code § 12.1–20–03.1 (1999).

[3] As the majority notes, the *Richardson* Court cited state case law and statutes regarding sexual assault of a child represented as the only area where jury unanimity is avoided by treating individual offenses as a course of conduct crime. However, contrary to the majority's conclusions, that discussion should not be read to support the constitutionality of § 948.025(2). 526 U.S. 813, 821 (1999). The Court noted several mitigating factors that are not applicable to § 948.025(2). First, the Court noted that the federal Constitution does not impose a unanimous jury requirement upon the states. *Id.* When subject to scrutiny by this court, however, this distinguishing factor is inapplicable. Our state constitution does establish the right to a unanimous jury verdict.

¶ 44.   All told, I believe that § 948.025(2) cannot pass constitutional muster in light of *Richardson*. Section 948.025(2) poses substantial risks of unfairness to the criminal defendant and also lacks support in history and tradition. Accordingly, it exceeds the state's ability to define crimes in a manner that allows jury disagreement as to the modes of commission and violates due process.

¶ 45.   Although I would rest the fate of § 948.025(2) on the due process afforded by the Fourteenth Amendment, I also address the majority's treatment of the state constitutional guarantee of a unanimous jury verdict under Article I, Sections 5 and 7. I am concerned about the untold consequences of the majority's acceptance of *State v. Molitor*.[4]

¶ 46.   By accepting the court of appeals' analysis in *Molitor*, the majority seems to have expanded the

---

Second, among the state laws reviewed by the *Richardson* Court, California's counterpart to § 948.025 was noted as truly exceptional on the ground that it defines the statutory offense in terms of other predicate offenses. *Id.* (discussing Cal. Penal Code Ann. § 288.5 (West Supp. 1998)). Because § 948.025 also defines the statutory offense with reference to other predicate offenses, it must be viewed in the same light as the California statute: a unique statute singled out by the Supreme Court and on which the Court has not placed its imprimatur.

[4] Not only do I disagree with the analysis of the *Molitor* court, but I note that the discussion of the constitutionality of § 948.025(2) was unnecessary to the court of appeals decision in that case. In *State v. Molitor*, 210 Wis. 2d 415, 565 N.W.2d 248 (Ct. App. 1997), the defendant pled no contest to § 948.025(1). Section 948.025(2), which applies only to cases tried to a jury, was not implicated. Nevertheless, the court of appeals reached out and ruled on the constitutionality of § 948.025(2). Today the majority opinion adopts the analysis of the court of appeals' advisory opinion in *Molitor*.

principles of *State v. Giwosky*, 109 Wis. 2d 446, 326 N.W.2d 232 (1982), and *State v. Lomagro*, 113 Wis. 2d 582, 335 N.W.2d 583 (1983), to an irrational degree. The potential result is that *Giwosky* and *Lomagro* and the accepted delineation of the jury unanimity requirement expressed in those cases have been wholly undermined.

¶ 47. *Giwosky* and *Lomagro* provide that a continuous criminal episode, although consisting of numerous criminal acts, may be treated as a single offense and that a jury need not be unanimous as to which specific act serves as the basis for conviction. In *Giwosky*, the requirement of jury unanimity was not violated when jurors were able to conclude that either of two assaultive acts committed within minutes in the same fight supported the defendant's battery conviction. We reasoned that "[t]he evidence introduced at trial established that the encounter was a short continuous incident that cannot be factually separated." 109 Wis. 2d at 456. In *Lomagro*, the guarantee of jury unanimity was not violated where numerous acts of sexual violence occurring over a two-hour period were presented to the jury as one count of sexual assault. We explained that, as in *Giwosky*, the encounter was "one continuing criminal episode and properly chargeable as one offense." 113 Wis. 2d at 598.

¶ 48. By adopting the *Molitor* rationale, the majority takes the *Giwosky/Lomagro* concept of a continuous criminal episode, limited in time and circumstance, and extrapolates it to include a series of non-continuous, separate and distinct criminal episodes. In doing so the majority seemingly defeats the concept of continuity that was the backbone of the *Giwosky* and *Lomagro* analysis.

¶ 49. Although the majority dons § 948.025 with the title of a "continuous course of conduct" crime, there is nothing continuous about the predicate offenses that comprise the violation of § 948.025 in this case. These crimes may involve the same victim and offender and they may be related offenses. They may also be part of a recurring pattern of conduct on the part of the defendant. However, unlike *Giwosky*, which involved offenses separated by a few minutes or *Lomagro* where the time span was around two hours, the offenses here are interrupted significantly by time and space. They occurred on different days, in different months, and in different places. They do not represent a single episode, but multiple episodes. As such, they must be viewed as multiple offenses, not a single "continuous" offense.

¶ 50. If the concept of continuity expressed in *Giwosky* and *Lomagro* can be read to satisfy the unanimity requirement in the case at hand, I, for one, no longer have any sense of the limits of the state constitution's unanimity protection. Could the state have pursued all of the sexual assaults in this case as one count of sexual assault under § 948.02, leaving the jury free to disagree as to whether an assault that occurred in July or one in committed in August is the basis for conviction? Because the individual assaults may be viewed together as a "continuous course of conduct crime" under the reasoning of the majority and *Molitor*, the State apparently could have pursued such a charge. Did the majority intend such a result? I do not think so. Can the majority reason its way out of those potential consequences? Not without rejecting the rationale of *Molitor*.

¶ 51. Finally, I note that in lieu of *Giwosky* and *Lomagro* to further guide us in defining the limits of

the unanimity protection, the majority seems to have also left us with the most curious of constitutional standards. It has seemingly transformed the constitutional inquiry under Article I, Sections 5 and 7 into little more than a circuitous inquiry into legislative intent. Majority op. at ¶¶ 11–12 & ¶ 14. Under the majority's analysis legislative intent is apparently now the be all and end all of the Wisconsin constitution's guarantee of a unanimous jury verdict. Simply put, the majority's analysis directs that if the legislature intended to abrogate jury unanimity, then the state constitution presents no bar to the statutory definition.

¶ 52.   In sum, the court of appeals asked us to render a decision in this case to reconcile its prior decision under the state constitution in *Molitor* with the due process formulation of the Supreme Court in *Richardson*. My response to the court of appeals is that there can be no reconciliation. The demands of due process, and in particular the risks of unfairness enunciated by the *Richardson* Court, defeat the constitutionality of § 948.025(2). By engaging in its own due process formulation, however, the majority fails to acknowledge that *Richardson* is controlling authority and that it requires this result. Not only does the majority depart from the United States Supreme Court to reach an incorrect result, but because it endorses the reasoning of *Molitor*, the majority leaves our state constitutional unanimity protection in a confused and troublesome condition.

¶ 53.   I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice WILLIAM A. BABLITCH join this dissenting opinion.