IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS              

 

                                                                              

                                                               NO.
PD-0363-05



 

 

                                   RAYMOND JEFFERSON, Appellant

 

                                                             v.

 

                                             THE
STATE OF TEXAS

 



               ON
APPELLANT=S PETITION FOR DISCRETIONARY REVIEW

                         FROM
THE FOURTEENTH COURT OF APPEALS

                                                HARRIS  COUNTY



 

Hervey,
J., delivered the opinion of the Court in which Meyers, Keasler, Holcomb
and Cochran, JJ., joined.  Keller, PJ., concurred.  Womack,
J., dissented. Cochran, J., filed a concurring opinion in which Price
and Johnson, JJ., joined.   

 

 

                                                                   O
P I N I O N 

 








A jury unanimously found appellant guilty of the
offense of injury to a child.[1] 
The issue in this case is whether a jury instruction was required informing the
jury that it also had to unanimously agree on at least one of these three
theories in order to convict: (1) that appellant injured the child by
commission (striking the child with his foot or with an unknown object), or (2)
that appellant injured the child by omission by failing to prevent the child=s mother from injuring the child, or (3) that appellant injured the
child by omission by failing to provide proper medical care for the child.  We
hold that the jury in this case was not required to unanimously agree on any of
these theories.

Appellant, the child and the child=s mother lived together.  The evidence shows that appellant and the
child=s mother severely abused the child for approximately
two years.  This pattern of abuse culminated in a September 7, 2001, incident
(or transaction) during which the child was severely injured.  The child was
struck by some object, causing her to fall and hit her head.  Neither appellant
nor the child=s mother sought medical attention for the child even
though the child was obviously in great distress.  The child died very soon
after being struck.  The mother initially told the police that she struck the
fatal blow to the child during the September 7, 2001, episode.  She testified
at trial, however, that appellant struck the fatal blow to the child during
this incident.








On this record, it is not clear that the State
sought to convict appellant based solely on the September 7, 2001, incident. 
However, several things in the trial record and the parties= briefs lead us to conclude that the State was relying on this
incident.  In a reply brief, appellant does not dispute the State=s assertion in its original brief that it was not Arelying upon multiple acts of serious bodily injury in order to support
the appellant=s conviction.@

Also, during its closing jury arguments, the
prosecution referred to the prior acts of abuse, not as a basis to convict, but
to explain why appellant and the mother did not seek medical attention for the
child during the September 7, 2001, incident.

[PROSECUTION]: I don=t expect you
to like [the mother].  I can=t stand the woman.  I don=t expect you to have one ounce of sympathy for her because she lied. 
The whole family lied.  Why?  To cover up their little scapegoat of a child who
was a disgrace to the family, who was battered and bruised with 56 different
injuries.  They couldn=t take that child to the doctor.  They knew they=d both be getting arrested immediately.  They couldn=tBthat=s why they intentionally and knowingly did not call
9-1-1 . . .

 

The prosecution=s closing jury arguments focused almost entirely on
the September 7, 2001, incident as the basis to convict.  For example,

[THE PROSECUTION]: You do not have to agree on
whether or not [appellant] did it by co-mission [sic] or omission and that=s what we talked about in voir dire.  And the reason that=s so is because [the mother] gave conflicting statements.

 

Now the greater weight of the evidence clearly
supports that [appellant] is the one who physically kicked [the child] with
such force it caused her head to strike something which caused her to be
shaking, foaming at the mouth, go unconscious and she eventually died.  That=s the greater weight of the evidence.  But if some of you believe that
I=m not so sure about that but I believe that he had
care, custody and control of that child, he believed he was the father, at the
very least he was the stepfather living in that house as a family and he did
not pick up the phone to call 9-1-1 to get medical treatment for that child it
doesn=t matter if you agree six of one half dozen of the
other it=s still a guilty verdict for injury to a child.

* * *








When a grown man, whatever it is, he weighs
somewhere between 250 and 280, kicks a weak, malnourished 47 pound six year old
with the kind of force that it=s going to take to cause that kind of head trauma
that=s knowingly.  When an adult kicks a small, weak,
defenseless child that is knowingly.  You know you=re going to hurt her and you know you=re going to
hurt her bad because you=re an adult and that is a small, defenseless child. 
You know you=re going to hurt that child when that child is
laying on the floor, foaming at the mouth and shaking and unconscious and her
body is twitching because she=s convulsing.  You know if you don=t pick up the telephone you know that child is probably going to die. 
You know that.

* * *

When you look at the facts of this case and the
evidence that you heard you may not have every detail answered in your mind but
you don=t have to.  When you look at it and you step back
and you look at the big picture what do you see?  You see two parents who
really didn=t ever deserve to have a child and those parents let
that child die.  They killed that child. [The mother] and [appellant] killed
that child and the reason that he is here is because of his action and his
in-action and the reason that [the mother] is also here is because of her
action and her in-action.

* * *

[Appellant] tells you that finally he admits to
being home that day off sick and says well yeah, [the child] was there. 
Finally admits yeah [the child] was in the house September 7, 2001, then he
says but I wasn=t.  Now mind you he was sick, that he called in
sick, off work.  He had diarrhea that day.  I had to go to the store for
diarrhea medicine.  He tells you that he=s gone for six hours.  He walks to Walgreens and he=s gone for six hours and goes and sits at a bus stop for six hours. 
And I don=t mean to be crude but when you got diarrhea where
do you want to be?  At home by your own private bathroom not walking on the
streets of Houston, Texas for six hours sitting in a bus stop when you=ve got diarrhea.  He=s a liar.

 

The facts make sense when you put the picture
together and [the mother] and [appellant] are equally responsible for the death
of [the child] and I=m going to ask you to find him guilty of
intentionally or knowingly causing serious bodily injury to this child.  We
will never know if this child could have lived.  We will never know and we don=t have to prove to you that she could have survived if they called
9-1-1.

 

Dr. Wolf says sometimes they do and sometimes they
don=t but my God folks you at least try.

 

During its closing jury arguments, the defense
emphasized several times that this case was Aabout the events
that happened on September 7, 2001,@ even though the Aprosecution
would have [the jury] rule on the events as they occurred over two years.@  For example,

[THE DEFENSE]: That=s what he
did.  What happened that day?  This trial is about the events that happened on
September 7, 2001.  The events you=re asked to rule on, to rule on to determine guilt
or innocence are the events that occurred on September 7, 2001, when [the
child] was killed.

 








The prosecution would have you rule on the events as
they occurred over two years.  They would just assume that you find him guilty
for what happened in August, July or May or any of those prior events.  If you=re going to look and you=re going to say well we don=t care so much about September 7 we=re just going
to rule guilty because the child was there, he must have known, let=s just hang him right now.

 

The prosecution=s response to this during its final closing jury
arguments was somewhat ambiguous.  The prosecution did not expressly and
unequivocally argue that the jury should Arule on the events as they occurred over two years@ as a basis to convict.  For example,

[THE PROSECUTION]: We don=t care whether or not you believe that on the night of September 7 [appellant]
kicked that child so hardBthere are no holes in the wall by the way, but so
hard that some object impacted her head and she died at the hands of
[appellant].  I don=t care.  I don=t care.  That child=s death was
inevitable.  This was going to be the result.  It culminated, in a moment on
September 7, 2001 but there was no other outcome.  It would have happened
whether it was the next day or the day before or two, three or four days later
or a week later.  That child was dead and we all know it.  And I can=t for the life of me see how another human being wouldn=t stop it.  Thank you.

 

The jury was instructed that it could convict
appellant if it found that appellant caused serious bodily injury to the child
on or about September 7, 2001, under multiple theories submitted disjunctively.

Now, if you find from the evidence beyond a
reasonable doubt that the defendant, Raymond Jefferson, in Harris County,
Texas, on or about the 7th day of September 2001, did then and there
unlawfully intentionally or knowingly cause serious bodily injury to Raysate
Knight, a child younger than fifteen years of age, by striking Raysate Knight
with his foot; or

 

If you find from the evidence beyond a reasonable
doubt that the defendant, in Harris County, Texas, on or about the 7th
day of September 2001, did then and there unlawfully intentionally or knowingly
cause serious bodily injury to Raysate Knight, a child younger than fifteen
years of age, by causing Raysate Knight=s head to strike an unknown object; or

 

If you find from the evidence beyond a reasonable
doubt that the defendant, in Harris County, Texas, on or about the 7th
day of September 2001, did then and there unlawfully while having assumed care,
custody or control of Raysate Knight, intentionally or knowingly by omission
cause serious bodily injury to Raysate Knight, a child younger than fifteen
years of age, by failing to intercede or stop the physical abuse of Raysate
Knight by Connie Knight; or








If you find from the evidence beyond a reasonable
doubt that the defendant, in Harris County, Texas, on or about the 7th
day of September 2001, did then and there unlawfully while having assumed care,
custody or control or Raysate Knight, intentionally or knowingly by omission
cause serious bodily injury to Raysate Knight, a child younger than fifteen
years of age, by failing to provide proper medical care to Raysate Knight;

 

Then you will find the defendant guilty of
intentionally or knowingly causing serious bodily injury to a child younger than
fifteen years of age, as charged in the indictment.[[2]]

 













The jury unanimously convicted appellant of Aintentionally or knowingly causing serious bodily injury to a child
younger than fifteen years of age, as charged in the indictment,@and sentenced him to life in prison.[3] 
Appellant claimed on direct appeal that Athe jury charge permitted a finding of guilt on less
than a unanimous verdict.@[4]  The Court of Appeals decided that appellant=s right to a unanimous verdict was not violated because Ait is proper to charge a jury in the disjunctive with multiple theories
of committing a single offense.@  Jefferson, slip op. at 3.[5] 
The Court of Appeals distinguished our decision in Francis v. State[6]
because there Atwo separate offenses [occurring on different dates]
were submitted to the jury in the disjunctive, not [as in this case] one
offense with alternate theories of commission.@  Jefferson,
slip op. at 3-4.  This Court granted appellant=s petition
for discretionary review.  The sole ground upon which we granted review states:

Where alternate theories of committing the same
offense have separate, distinct elements, a defendant is entitled to a
unanimous verdict under the 14th Amendment.

 

            Appellant argues that due process
requires more than jury unanimity that the child suffered a serious bodily
injury.  In his brief, he argues:

11. . . . injury to a child by act, injury to a
child by omission, for failing to intercede and stop the abuse of [the child],
and injury to a child by omission, by failing to seek proper medical care are
not the same, single, specific, criminal act committed at the same time or with
the same mens rea and the same actus reus.  Either [appellant]
committed the injury to a child, or he failed to prevent [the mother] from
committing the injury.  Not only are both acts different acts, but they are
conflicting acts. [Appellant] can not be guilty of both injuring the child, and
failing to prevent [the mother] from injuring the child.  Furthermore, failing
to seek medical attention is not the same act.  Failing to seek medical
attention presupposes a condition exists that requires medical attention.

 

12.  The charge submitted was error because: (1)
less than twelve jurors could have agreed that [appellant] actually hit the
child; (2) less than twelve jurors could have agreed that [appellant] assumed
care, custody, or control of the child; (3) less than twelve jurors could have
agreed that [appellant] had a legal duty to prevent [the mother] from
committing the injury; (4) less than twelve jurors could have agreed that
[appellant] knew [the mother] was going to injure the child; or (5) less than
twelve jurors could have agreed that the serious bodily injury resulted from
[appellant=s] failure to seek medical attention.  As you can
see, the only common element between Aact@ and Aomission@ that the jury required unanimity on was that [the
child] suffered a serious bodily injury.  Surely ADue Process@ required more.

 








AUnder our state constitution, jury unanimity is required in felony
cases, and, under our state statutes, unanimity is required in all criminal
cases.@  Ngo v. State,     S.W.3d    ,
slip op. at 10 (Tex.Cr.App. No. PD-0504-04, delivered March 16, 2005). 
However, as the Wisconsin Supreme Court explained in State v. Johnson,
627 N.W.2d 455, 459-60 (Wis.), cert. denied, 534 U.S. 1043 (2001):

To say that the jury must be unanimous, however,
does not explain what the jury must be unanimous about.  For this we look to
the statutory language defining the crime and its elements.  AThe principle justification for the unanimity requirement is that it
ensures that each juror is convinced beyond a reasonable doubt that the
prosecution has proved each essential element of the offense.@ [Citation omitted].  Thus, while jury unanimity is required on the
essential elements of the offense, when the statute in question establishes
different modes or means by which the offense may be committed, unanimity is
generally not required on the alternate modes or means of commission. [Citation
omitted].

 

Ordinarily, then, the first step in a unanimity
challenge is an examination of the language of the statute in order to
determine the elements of the crime and whether the legislature has created a
single offense with multiple or alternate modes of commission. [Citation
omitted].  AThe point is to determine legislative intent: did
the legislature intend to create multiple, separate offenses, or a single
offense capable of being committed in several different ways?@ [Citation omitted].  For example, where the legislature has specified
that any of several different mental states will satisfy the intent or mens rea
element of a particular crime, unanimity is not required on the specific alternate
mental state as long as the jury unanimously agrees that the state has proven
the intent element beyond a reasonable doubt. [Citation omitted].[[7]]

 








Federal constitutional due process considerations,
however, limit the state=s ability to define a crime so as to dispense with
the requirement of jury unanimity on the alternate means or modes of committing
it. [Citations omitted].  So the second step in the analysis is an evaluation
of whether the lack of jury unanimity on the alternate means or modes of
commission violates due process. [Citation omitted].  This involves an inquiry
into the fundamental fairness and rationality of the legislative choice,
starting, however, with a presumption that the legislature has made its
determination fairly and rationally. [Citation omitted].  As we noted in
[citation omitted], the due process fundamental fairness and rationality test
for unanimity challenges was established by the Supreme Court in Schad[[8]]
and focuses on historical practice and the relative moral and conceptual
equivalence of the alternate modes or means of committing the crime. [Citation
omitted].[[9]]

 

The first question we address, then, is whether the
Legislature intended to make Aact or omission@ in Section 22.04(a) separate elements of the
offense or underlying Abrute facts [or means that] make up a particular
element.@  See Richardson, 526 U.S. at 817-18.  We
believe it clear that the Legislature intended the latterBthat Aact or omission@ constitute the means of committing the course of
conduct element of injury to a child.








The language of Section 22.04(a) and prior case-law
support this construction.  Section 22.04(a)(1) states, in relevant part, that
a person commits the offense of injury to a child if (with a particular
culpable mental state) he causes serious bodily injury to a child by Aact or omission.@  See Footnote 1.  Construing the statute to
mean that the conduct element of the offense can be committed by a combination
of these two means is consistent with its plain language.  This Court=s prior case-law also supports a decision that the essential element or
focus of the statute is the result of the defendant=s conduct (in this case, serious bodily injury to a child) and not the
possible combinations of conduct that cause the result.  See Alvarado v.
State, 704 S.W.2d 36, 39 (Tex.Cr.App. 1985) (because injury to child
statute does not specify the Anature of conduct,@ the conduct
is inconsequential to its commission as long as Athe conduct
(whatever it may be is voluntary) and done with the required culpability to
effect the result the Legislature has specified@) (emphasis in original); Beggs v. State, 597 S.W.2d 375, 377
(Tex.Cr.App. 1980) (injury to child statute focuses on result of suspect=s conduct).  We, therefore, decide that Aact or
omission@ are not elements of an injury to a child offense
about which a jury must be unanimous.

In support of his jury-unanimity claim, appellant
relies on this Court=s decision in Ngo.  This case is
distinguishable from Ngo.  In Ngo, the State sought one
conviction for  credit-card abuse with evidence that at different times the
defendant committed three different acts that the applicable statute defined as
separate criminal offenses and not as means of committing a single criminal
offense.  See Ngo, slip op. at 8.[10] 
In this case, however, the State sought one conviction for an injury to a child
offense with evidence that during the September 7, 2001, incident appellant
committed three different acts that the applicable statute defines as means of
committing a single criminal offense and not as three separate criminal
offenses.  In other words, with the focus limited to the September 7, 2001,
incident, Ngo is distinguishable because the applicable statute in Ngo
defined the three acts involved as separate criminal offenses while the
applicable statute here defines the three acts involved as means of committing
a single criminal offense.[11]








This presents the question of whether dispensing
with jury unanimity on the Aact or omission@ that comprise the course of conduct element of the
offense violates due process under Schad.  See Johnson, 627
N.W.2d at 461; see also Richardson, 526 U.S. at 820 and at 836-37
(Kennedy, J., dissenting).  We decide that dispensing with unanimity does not
violate due process because the acts or omissions that combine to establish the
offense in this particular case are Abasically morally and conceptually equivalent.@ See Johnson, 627 N.W.2d at 461; Schad, 501 U.S. at 643
(due process question is whether one means Amay ever be
treated as [the] equivalent@ of another).  These acts and omissions all involve
the same injury to the same child during the same transaction with a similar
level of culpability.  See Johnson, 627 N.W.2d at 461.








The resolution of the due process component of the
analysis essentially requires a decision on whether this case falls within one
of two scenarios described in Justice Scalia=s concurring
opinion in Schad, 501 U.S. at 648-52 (Scalia, J., concurring in part and
concurring in the judgment).  The first involves Anovel >umbrella= crimes (a felony consisting of either robbery or
failure to file a tax return) where permitting a 6-to-6 verdict would seem
contrary to due process.@  Schad, 501 U.S. at 650 (Scalia, J.,
concurring).  The other is when Aa woman=s charred body has been found in a burned house, and
there is ample evidence that the defendant set out to kill her, it would be
absurd to set him free because six jurors believe he strangled her to death
(and caused the fire accidentally in his hasty escape), while six others
believe he left her unconscious and set the fire to kill her.@  See id.

This case fits more readily in the latter scenario. 
We believe that it would be equally Aabsurd@ to set appellant free because, for example, six
jurors may have believed that he struck the fatal blow to the child while six
other jurors may have believed that he failed to pick up the phone and call
9-1-1 to seek medical help for a child who was obviously very seriously injured
and in great distress.

The judgment of the Court of Appeals is affirmed.

 

Hervey, J.

 

Filed:
April 12, 2006

Publish

 









[1]  Tex. Pen.
Code, '22.04, defines the offense of injury to a child in relevant part as:

(a)
A person commits an offense if he intentionally, knowingly, recklessly, or with
criminal negligence, by act or intentionally, knowingly, or recklessly by
omission, causes to a child, elderly individual, or disabled individual:

(1)
serious bodily injury;

(2)
serious mental deficiency, impairment, or injury; or

(3)
bodily injury.

(b)
An omission that causes a condition described by Subsections (a)(1) through
(a)(3) is conduct constituting an offense under this section if:

(1)
the actor has a legal or statutory duty to act; or

(2)
the actor has assumed care, custody, or control of a child, elderly individual,
or disabled individual.

* * *

(d) For
purposes of an omission that causes a condition described by Subsection (a)(1),
(2), or (3), the actor has assumed care, custody, or control if he has by act,
words, or course of conduct acted so as to cause a reasonable person to
conclude that he has accepted responsibility for protection, food, shelter, and
medical care for a child, elderly individual, or disabled individual . . .
.





[2]

The jury was then instructed to consider whether appellant was guilty of
recklessly causing serious bodily injury to a child if it had a reasonable
doubt on whether appellant was guilty of intentionally or knowingly causing
serious bodily injury to a child.  The trial court submitted separate verdict
forms (one for intentionally or knowingly causing serious bodily injury and one
for recklessly causing serious bodily injury) to take into account the separate
punishment ranges between the former and the latter.  See Tex. Pen.
Code, ' 22.04(e)
(intentionally or knowingly causing serious bodily injury is first degree
felony and recklessly causing serious bodily injury is second degree felony).  





[3]

The record
reflects that appellant=s
first trial ended in a mistrial.  The verdict form in appellant=s first trial required the
jury to unanimously agree that appellant committed the offense by commission or
to unanimously agree that he committed it by omission, and appellant urged that
this is how the jury should have been charged in his retrial.  During the
charge conference at appellant=s
retrial, the trial court ruled that it would not charge the offense this way.

 

[THE COURT]: Okay. 
We can get on the record because I=ve
made up my mind how I=m
going to rule.

 

[THE DEFENSE]: Your
Honor, is The Court not going to separate omission from co-mission?

 

[THE COURT]: You
mean on the verdict page?

 

[THE DEFENSE]: On
the verdict page.

 

[THE COURT]: No, I=m not going to.

 

[THE DEFENSE]: That
means only one person can find guilty, if they find he had care, custody and
control.  If 11 people think he=s
guilty of co-mission of actually doing it and only one person thinks he=s guilty of omissionB

 

[THE COURT]: He can
be convicted.

 

[THE DEFENSE]: He
can be convicted.

 

[THE COURT]: Right. 
That=s right or it can
be any combination.

 

[THE DEFENSE]: 12
people don=t have to
find that he had care, custody and control to be guilty of omission.

 

[THE COURT]: Not if
they found that he committedBif
12 people find him guilty of omission they all 12 have to find that he had
care, custody and control and that=s
clear from the charge because that=s
in the application paragraph and even in the omission paragraph says having
care, custody and control did it fail to do whatever.

 

[THE DEFENSE]: I
just know last time we had one person that thought he did it for co-mission and
some people thought he was guilty, or most people thought he was guilty of
omission and that means if 11 people find him guilty of omission that means one
person didn=t find him
guilty but didn=t find
he had care, custody and control.  They were neverB

 

[THE COURT]: They don=t have to all find omission
or co-mission.  There can be a combination and that was the problem with the
way I submitted it last time.  I shouldn=t
have submitted it that way.  I could have submitted it a different way or this
way and I=m going to
submit it this way this time.  





[4] Jefferson v. State, No. 14-03-01050-CR,
2004, slip op. at 2 (Tex.App.--Houston [14th Dist.], Delivered
November 24, 2004) (not designated for publication).





[5]

The September 7, 2001, incident arguably involved a single offense
committed by multiple means (act or omission) causing one injury resulting in
death.





[6]

36 S.W.3d 121 (Tex.Cr.App. 2000).





[7]

See also Richardson v. United States, 526 U.S. 813, 817-19 (1999)
(courts must examine language of statute to determine whether particular term
in statute is an element, which requires juror unanimity, or an underlying
brute fact or means of committing an element which does not require juror
unanimity); Ngo, slip op. at 13 n. 32 (juror unanimity required on
elements but not on the means by which the elements are accomplished).  





[8]

Schad v. Arizona, 501 U.S. 624 (1991) (plurality op.).





[9]

See also Richardson, 526 U.S. at 820 (AConstitution itself limits a State=s power to define crimes in
ways that would permit juries to convict while disagreeing about means, at
least where that definition risks serious unfairness and lacks support in
history or tradition@).






[10]

In Ngo, the indictment contained
three paragraphs that improperly alleged three separate statutorily defined
offenses during three different episodes: 1) stealing a credit card, 2)
receiving a stolen credit card, and 3) fraudulently presenting a credit card to
pay for goods or services.  See Ngo, slip op. at 1 and at 8 (prosecution
sought conviction for the commission of one offense by proving any of three
different criminal acts, occurring at three different times, and in three
different ways); see also Article 21.24(a), Tex.
Code Crim. Proc.,
(two or more offenses may be joined in a single indictment with each offense
stated in a separate count if they arise out of the same criminal episode).





[11]

We also note that at least one other
jurisdiction has held in cases like this that no unanimity instruction is
required Awhen the acts [of abuse] are so closely connected
that they form part of one and the same transaction, and thus one offense@ or when the applicable statute Acontemplates a continuous course of conduct of a
series of acts over a period of time.@  See People v. Napoles, 127 Cal.Rptr.2d 777,
782-84 (Cal. App. 1st Dist. 2002, review denied); see also
State v. Sleeper, 846 A.2d 545, 548 (N.H. 2004) (statute defining crime as Ainvolving a continuous
course of conduct does not require jury unanimity on any specific, discrete
act, as that specific act itself is not criminalized@).  The Napoles
Court explained that this second category has been applied Ato a limited number of varying crimes, including . . . child
abuse@ and that when, as here, the statutory language Afocuses on the goal or effect of the prohibited crime, the offense is a
continuing one@ with no requirement of a unanimity instruction on
the multiple acts that constitute the single criminal event.  See Napoles,
127 Cal.Rptr.2d at 783 (emphasis in original); see also Richardson, 526
U.S. at 821 (discussing state cases involving crimes against children as
presenting Aspecial difficulties@ justifying
an exception to traditional jury unanimity rules).  This case does not
require us to decide whether Section 22.04(a) Acontemplates
a continuous course of conduct of a series of acts over a period of time@ because our focus is on
the September 7, 2001, incident which involves acts Aso closely connected that they form part of
one and the same transaction, and thus one offense.@  See Napoles, 127 Cal.Rptr.2d at 783.