Merrimack
No. 2003-254

### THE STATE OF NEW HAMPSHIRE

### v.

### LAWRENCE SLEEPER

Argued: February 5, 2004
Opinion Issued: April 16, 2004

*Peter W. Heed,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief and orally, for the defendant.

NADEAU, J. Following a jury trial, the defendant, Lawrence Sleeper, was convicted on two counts of felonious sexual assault, *see* RSA 632-A:3, II, III (1996), and four pattern counts of aggravated felonious sexual assault, *see* RSA 632-A:2, III (1996). He appeals a decision by the Superior Court (*Fitzgerald,* J.) denying his pretrial motion to quash the four pattern indictments. We affirm.

The jury could have found the following relevant facts. In 1997, S.R. met the defendant. At that time, she was approximately ten or eleven years old. Soon after meeting him, she was invited to accompany him on a motorcycle ride to the White Mountains. With her father's permission, S.R. went on the ride. During the return trip, the defendant stopped the motorcycle and touched S.R.'s breasts beneath her shirt. She did not tell her father, because she "didn't think he would believe [her]." As a result of this incident, the defendant was charged with one count of felonious sexual assault. *See* RSA 632-A:3, III.

Over time, S.R.'s father became close friends with the defendant. S.R. began spending time with him and his mother at the home they shared. During her visits, S.R. sometimes brought along her friend, K.H.

Following the death of the defendant's mother in January 2000, S.R. and K.H. began sleeping at the defendant's home on weekends. In March, the defendant started performing oral sex on both girls during their visits. Except for a two-month period during the summer of 2000, the defendant continued performing oral sex on S.R. and K.H. at least every other weekend until the summer of 2001. These incidents resulted in two pattern counts of aggravated felonious sexual assault—one for the assaults committed against each girl. *See* RSA 632-A:2, III.

Approximately three months after the defendant began performing oral sex on the girls, he engaged in sexual intercourse with them. S.R. testified at trial that the defendant had sexual intercourse with her at least once each month, over the course of a year. K.H. testified that the defendant had sexual intercourse with her on one occasion. These events gave rise to one pattern count of aggravated felonious sexual assault for acts perpetrated against S.R., *see* RSA 632-A:2, III, and one count of felonious sexual assault for the act committed against K.H., *see* RSA 632-A:3, II. K.H. further testified that the defendant digitally penetrated her on multiple occasions. As a result, the defendant was charged with pattern aggravated felonious sexual assault. *See* RSA 632-A:2, III. He was ultimately convicted on all counts.

On appeal, the defendant argues that the trial court erred in denying his motion to quash the four pattern indictments for failure to identify at least two specific predicate offenses underlying the pattern of sexual assault. Specifically, he argues that the pattern indictments violated his State and Federal Constitutional rights to jury unanimity, as well as his federal due process rights.

We begin with the issue of jury unanimity. RSA 632-A:2, III provides, in relevant part, that "[a] person is guilty of aggravated felonious sexual assault when such person engages in a pattern of sexual assault against another person . . . who is less than 16 years of age." "Pattern of sexual assault" means "committing more than one act under RSA 632-A:2 . . . upon the same victim over a period of 2 months or more and within a period of 5 years." RSA 632-A:1 (Supp. 2003). Because the statute explicitly requires the underlying acts that comprise the pattern to occur within a precise period of time—"over a period of 2 months or more and within a period of 5 years"—the defendant argues that the jury must "agree[] unanimously as to the commission of two particular sexual assaults spaced far enough apart to satisfy the statutory definition of a

pattern." The defendant contends that given that the indictments in this case failed to identify any two particular predicate offenses that would satisfy this temporal element, the indictments violated his right to jury unanimity guaranteed by both the State and Federal Constitutions.

■ ■ We first address the defendant's claims under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 232-33. In New Hampshire, both constitutional and statutory law afford criminal defendants the right to jury unanimity. *See State v. Fortier*, 146 N.H. 784, 789 (2001). Jurors must be unanimous about what constitutes the essential culpable act committed by the defendant and prohibited by the statute. *State v. Greene*, 137 N.H. 126, 129 (1993). Where discrete factual predicates provide alternative bases for finding an element of the offense to have been established, a defendant is entitled to jury unanimity as to the factual predicate supporting a finding of guilt. *Id.*

■ We have recognized, however, that a crime involving a continuous course of conduct does not require jury unanimity on any specific, discrete act, as that specific act itself is not criminalized. *Fortier*, 146 N.H. at 789. In those cases, "the *actus reus* is a series of acts occurring over a substantial period of time, generally on the same victim and generally resulting in cumulative injury." *Id.* (quotation omitted). The jury, then, "need only be unanimous in finding that a defendant engaged in a criminal course of conduct." *Id.* Because "the extent to which jury unanimity is required begins—and sometimes ends—with the text of the statute," *United States v. Lee*, 317 F.3d 26, 37 (1st Cir. 2003), we must ask what conduct RSA 632-A:2, III prohibits, and, more specifically, what elements comprising the prohibited act must be included in the indictment. *See State v. Davis*, 149 N.H. 698, 704 (2003).

■ RSA 632-A:2, III criminalizes a continuing course of sexual assaults, not isolated instances. *Fortier*, 146 N.H. at 791. "The essential culpable act, the *actus reus*, is the pattern itself, that is, the occurrence of more than one sexual assault over a period of time, and not the specific assaults comprising the pattern." *Id.* As a result, to secure a conviction under the pattern statute while preserving a defendant's right to a unanimous jury verdict, the jury must "unanimously agree that a defendant engaged in more than one act of sexual assault as described in RSA 632-A:2 . . . but need not agree on the particular acts, provided that they find the requisite number of acts occurred *during the statutory time period*." *Id.* (emphasis added). Thus, both the pattern itself and its temporal requirement

constitute elements of the culpable act upon which jurors must unanimously agree. *See Greene*, 137 N.H. at 129.

The defendant argues that given the ruling of the United States Supreme Court in *Richardson v. United States*, 526 U.S. 813 (1999), we should overturn *Fortier* and hold that jurors must agree on at least two specific, predicate acts that comprise the pattern and satisfy the temporal requirement. We decline to do so, concluding that *Richardson* does not require us to alter our State constitutional analysis.

In *Richardson*, the Supreme Court vacated a conviction under the federal continuing criminal enterprise statute. *See id.* at 816; *see also* 21 U.S.C. § 848 (a)-(c). Citing the language of the statute, the Court held that the jury "must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" *Richardson*, 526 U.S. at 815 (quoting from statute providing that a person "engages in a continuing criminal enterprise" if the person "violates" any federal drug law, and that "violation is a part of a continuing series of violations"). Based upon statutory interpretation, as well as an examination of history and the risk of unfairness, *id.* at 818-20; *see also State v. Johnson*, 627 N.W.2d 455, 462 (Wis. 2001), the Court concluded that to permit conviction without jury unanimity would "cover up wide disagreement among the jurors about just what the defendant did, or did not, do." *Richardson*, 526 U.S. at 819. Moreover, the Court found "that jurors, unless required to focus upon specific factual detail, will fail to do so, simply concluding from testimony . . . that where there is smoke there must be fire." *Id.*

Despite the defendant's assertion, *Richardson* does not compel us to overturn *Fortier*. At the outset, we note that *Richardson* pre-dates *Fortier*, and in deciding *Fortier*, we considered the implications of *Richardson*. *See Fortier*, 146 N.H. at 789-90. Furthermore, *Richardson* is distinguishable.

First, the statute at issue in *Richardson*, unlike RSA 632-A:2, III, does not define the sole *actus reus* as the pattern, but criminalizes the individual violations underlying the pattern as well. *See Richardson*, 526 U.S. at 818 (holding that a "violation" is not simply an act or conduct, but an act or conduct that is contrary to law). Indeed, the *Richardson* Court expressly recognized the implications of this distinction on the question of unanimity: "If the statute creates a single element, a 'series,' in . . . which [three] individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes . . . . The jury need not agree about which three." *Id.* The Court

further stated that if, on the other hand, "the statute makes each 'violation' a separate element, then the jury must agree unanimously about which three crimes the defendant committed." *Id.* Overall, the jury unanimity requirement established in *Richardson* largely emanates from the statutory language that criminalizes the underlying acts; no such statutory language exists here.

Second, the *Richardson* Court explicitly noted that pattern sexual assault statutes present special circumstances regarding jury unanimity. *Id.* at 821-22. In examining various States' pattern sexual assault statutes, the Court stated that, "[w]ith one exception, the statutes do not define the statutory crime in terms that require the commission of other predicate crimes by the defendant." *Id.* at 821 (citations omitted). With regard to these statutes, the Court further recognized that it "has not held that the Constitution imposes a jury-unanimity requirement. And their special subject matter indicates that they represent an exception; they do not represent a general tradition or a rule." *Id.* at 821-22 (citation omitted). That the Supreme Court specifically excluded pattern sexual assault statutes from its analysis in *Richardson* reinforces our conclusion in *Fortier, see Johnson,* 627 N.W.2d at 464, and we decline to depart from its holding.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See Fortier,* 146 N.H. at 789; *Lee,* 317 F.3d at 36. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

Having resolved the issue of jury unanimity, we next ask "whether dispensing with unanimity on the predicate acts that comprise the [pattern] element of this offense is consistent with federal due process." *Johnson,* 627 N.W.2d at 461. The defendant argues that allowing the jury to convict him without agreeing on two specific acts "risks serious unfairness and lacks substantial support in history and tradition," thereby violating fundamental fairness. *See Schad v. Arizona,* 501 U.S. 624, 637 (1991) (plurality opinion).

We are mindful that "the Constitution itself limits a State's power to define crimes in ways that would permit juries to convict while disagreeing about means, at least where that definition risks serious unfairness and lacks support in history and tradition." *Richardson,* 526 U.S. at 820. Our ruling today, however, does not suffer from these infirmities.

In applying the test for fairness, "we look both to history and wide practice as guides to fundamental values," as instructed by the Court in *Schad. Schad,* 501 U.S. at 637. Because our pattern sexual assault crime is relatively new, however, history is a less important factor; "history will be

less useful as a yardstick in cases dealing with modern statutory offenses lacking common-law roots." *Id.* at 640 n.7.

Turning to widespread use, we note that like other jurisdictions that have codified pattern sexual assault statutes, "our legislature created RSA 632-A:2, III to respond to the legitimate concern that many young victims, who have been subject to repeated, numerous incidents of sexual assault over a period of time by the same assailant, are unable to identify discrete acts of molestation." *Fortier*, 146 N.H. at 790 (citing cases from California, Colorado, and New York). As recognized in *Richardson*, when applying these statutes, State courts have "sometimes permitted jury disagreement about a 'specific' underlying criminal 'incident' insisting only upon proof of a 'continuing course of conduct.'" *Richardson*, 526 U.S. at 821 (citing cases from California, Illinois, Connecticut, and Alaska). That other States have adopted an approach similar to ours militates against concluding that to do so violates principles of fundamental fairness. *See Schad*, 501 U.S. at 642. Indeed, pattern sexual assault statutes "respond to special difficulties" and are unique. *Richardson*, 526 U.S. at 821.

■ The test for fundamental fairness further requires us to examine whether the means of committing the crime "are so disparate as to exemplify . . . inherently separate offenses." *Schad*, 501 U.S. at 643. That is to say, we must consider "the relative moral and conceptual equivalence of the alternate modes or means of committing the crime." *Johnson*, 627 N.W.2d at 460. The predicate acts that form the pattern in sexual assault cases "are basically morally and conceptually equivalent." *Id.* at 461. In the instant case, the sexual conduct comprising each pattern was virtually identical and was committed against the same victim in each pattern charge. Moreover, the underlying acts involve the sexual abuse of a child under the age of sixteen—"crimes of the same or similar nature and level of culpability." *Id.* Any variation that may exist is "not of such a degree or nature as to call into question the basic moral and conceptual equivalence" of the underlying acts. *Id.* Consequently, "[i]t is . . . not unfair or irrational to lift the requirement of jury unanimity as to the specific underlying acts as long as unanimity is required regarding the existence of the [pattern]," defined by the temporal requirements set forth in the statute. *Id.*

In light of our holding, we conclude that the trial court did not err in denying the defendant's motion to quash the pattern indictments. Accordingly, we affirm.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.