IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,       )
                            )       2 CA-CR 2004-0105
            Appellee,       )       DEPARTMENT B
                            )
        v.                  )       O P I N I O N
                            )
JAY DAVID RAMSEY, SR.,      )
                            )
            Appellant.      )
_____)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20030703

Honorable Virginia C. Kelly, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Cassie Bray Woo                        Phoenix
                                                   Attorneys for Appellee

Jay Ramsey, Sr.                                                 Florence
                                                        In Propria Persona

---

P E L A N D E R, Chief Judge.

¶1          After a jury trial, appellant Jay David Ramsey, Sr. was convicted of continuous sexual abuse of a child in violation of A.R.S. § 13-1417.  He was sentenced to a

presumptive, twenty-year prison term pursuant to A.R.S. § 13-604.01(C). Among the multiple, overlapping issues Ramsey raises on appeal, he argues that the indictment against him was duplicitous and that § 13-1417 unconstitutionally violates the jury unanimity requirement of article II, § 23 of the Arizona Constitution. Finding no merit to those or the other issues he raises, we affirm.

## BACKGROUND

¶2        We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the conviction. *See State v. Riley*, 196 Ariz. 40, ¶ 10, 992 P.2d 1135, 1139 (App. 1999). In October 2001, on his daughter A.'s twelfth birthday, Ramsey had her read aloud a portion of a story in a binder he had about a father kissing and touching his daughter. That same day, Ramsey took A. to an adult store called Fascinations and bought her a vibrator and a bottle of lubricant.

¶3        Several days later, Ramsey's wife, S., found the binder, which Ramsey usually took to work, on the roof of the family's home. She looked at the binder, saw that it contained graphic, sexual stories involving incest, and contacted the police. In addition to the binder, S. and police officers found other sexual stories in a kitchen drawer, among Ramsey's clothing, and in a duffel bag in the garage, where they also found a vibrator. A. eventually told S. and police detectives, and testified at trial, that Ramsey had repeatedly touched her breasts, "butt," and vagina on multiple occasions starting in early 1999.

2

# DISCUSSION

## I. Duplicitous indictment and A.R.S. § 13-1417

¶4 Ramsey first contends § 13-1417 is "unconstitutionally duplicitous and therefore the indictment against [him was] duplicitous." Enacted in 1993, the statute provides in part that "[a] person who over a period of three months or more in duration engages in three or more acts in violation of [A.R.S.] § 13-1405, 13-1406 or 13-1410 with a child under fourteen years of age is guilty of continuous sexual abuse of a child." § 13-1417(A). The indictment against Ramsey alleged in a single count that, "[o]n or about the dates of January 1999 through December 2000," he had "committed continuous sexual abuse of a child by engaging in three or more acts of sexual conduct with a minor under fifteen and/or molestation of a child . . . in violation of A.R.S. § 13-1417."

¶5 Before trial, Ramsey moved to dismiss the indictment on the grounds "that the indictment was duplicitous in stating multiple offenses in one count and was outside the purview and constitutional jurisdiction of the jury." The trial court denied the motion. We review a trial court's ruling on a motion to dismiss criminal charges for abuse of discretion. *State v. Sandoval*, 175 Ariz. 343, 347, 857 P.2d 395, 399 (App. 1993). But we review questions of statutory interpretation and constitutional law de novo. *State v. Carrasco*, 201 Ariz. 220, ¶ 10, 33 P.3d 791, 794 (App. 2001); *State v. Tamplin*, 195 Ariz. 246, ¶ 6, 986 P.2d 914, 915 (App. 1999).

**¶6**          First, we agree with the state that Ramsey has "fail[ed] to cite to any authority for the proposition that a *statute* can be found 'unconstitutionally duplicitous.'" Because of that failure to comply with Rule 31.13(c)(1)(vi), Ariz. R. Crim. P., 17 A.R.S., we consider only whether the indictment against Ramsey was duplicitous. Separate offenses must be charged in separate counts. *Spencer v. Coconino County Superior Court*, 136 Ariz. 608, 610, 667 P.2d 1323, 1325 (1983); s*ee also* Ariz. R. Crim. P. 13.3(a), 16A A.R.S.; *State v. Axley*, 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982); *State v. Schroeder*, 167 Ariz. 47, 51, 804 P.2d 776, 780 (App. 1990). An indictment that charges separate or multiple crimes in the same count is duplicitous. *Spencer*, 136 Ariz. at 610, 667 P.2d at 1325. "Duplicitous indictments are prohibited because they fail to give adequate notice of the charge to be defended, because they present the hazard of a non-unanimous jury verdict and because they make a precise pleading of prior jeopardy impossible in the event of a later prosecution."[1] *Id.*

---

[1]*See also Wong Tai v. United States*, 273 U.S. 77, 80-81, 47 S. Ct. 300, 301, 71 L. Ed. 545, 547 (1927) (valid indictment "shall advise the defendant of the nature and cause of the accusation in order that he may meet it and prepare for trial, and after judgment, be able to plead the record and judgment in bar of a further prosecution for the same offense"); *State v. Davis*, 206 Ariz. 377, ¶ 54, 79 P.3d 64, 76 (2003); *State v. Tison*, 129 Ariz. 526, 538, 633 P.2d 335, 347 (1981) (defendant has fundamental right to reasonable notice of specific charge); *State v. O'Brien*, 123 Ariz. 578, 583, 601 P.2d 341, 346 (App. 1979) (duplicitous charges prohibited in order to give defendant notice and to avoid "consequences of the inability of the jury to indicate which way they are voting on each of the charges").

¶7        Ramsey argues "[a]ll of the problems with a duplicitous indictment . . . apply to this case."[2]  He first maintains he did not receive adequate notice of the alleged misconduct to enable him to defend against the charge.  Ramsey's global defense, however, was that his wife had set him up out of revenge and that he had not, and could not have, committed any of the alleged sexual acts against A.  Although, under some circumstances, an indictment's lack of specificity might hamper a defendant's ability to rebut or defend against the charges, Ramsey has not specifically articulated how his defense was impaired or prejudiced by the indictment against him.  *See State v. Whitney*, 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989) (defendant not denied "essential right to his defense" when defense was denial that offenses had occurred); *People v. Gear*, 23 Cal. Rptr. 2d 261, 268 (Ct. App. 1993) (finding no due process violation of defendant's "right to present a defense" when, "not untypically, [defendant] presented an all-or-nothing defense based on credibility—either he is telling the truth and he did not commit any act of molestation or [the victim] is telling the truth and he is guilty").[3]

---

[2]Ramsey's jury-unanimity arguments in relation to the alleged duplicity of the indictment against him mirror those in his separate argument on the constitutionality of the statute.  We therefore address those arguments below.  *See* ¶¶ 16-30, *infra*.

[3]*See also State v. Jones*, 188 Ariz. 534, 544, 937 P.2d 1182, 1192 (App. 1996) ("[a]ny defect in the dates alleged in the indictment . . . could not have prejudiced [the defendant's] defense" when "his sole defense was that [the victim] was lying"); *State v. Hamilton*, 177 Ariz. 403, 410, 868 P.2d 986, 993 (App. 1993) ("[I]n order to prevail on an arguably duplicitous indictment, defendant must demonstrate that he was actually prejudiced thereby.").

5

**¶8** Ramsey also contends the lengthy time period of the acts alleged in the indictment raises double jeopardy concerns. *See* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); Ariz. Const. art. II, § 10 ("No person shall . . . be twice put in jeopardy for the same offense."). According to Ramsey, nothing would prevent the state from again prosecuting him for events within the two-year period of the indictment by "arbitrarily and randomly picking three or more dates . . . from the same 1999-2000 period, claiming [A.] remembers more specific details . . . [and] repeat[ing] the process." Although the state argues § 13-1417(D) "dispenses with any problem with duplicity or double jeopardy," that subsection does not alleviate all double jeopardy concerns relating to potential future prosecutions. Rather, subsection (D) merely addresses what charges may be brought in a current proceeding involving a charge under § 13-1417, providing in pertinent part:

> Any other felony sexual offense involving the victim shall not be charged in the same [i.e., current] proceeding with a charge under this section unless the other charged felony sexual offense occurred outside the time period charged under this section or the other felony sexual offense is charged in the alternative.

**¶9** Nonetheless, the description of continuous sexual abuse in § 13-1417(A) is sufficiently clear to allow the "precise pleading of prior jeopardy" if the state were to attempt to reprosecute Ramsey for the same offense charged in the indictment in this case. *Spencer*, 136 Ariz. at 610, 667 P.2d at 1325. Although Ramsey posits hypothetical scenarios in which he might later be prosecuted under different statutes for some of the same

6

conduct at issue in this case, the Double Jeopardy Clause does not necessarily protect him from that risk. *See United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556, 568 (1993) (confirming for double jeopardy purposes a "same elements" test, as promulgated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306, 309 (1932), and overruling *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990), that had promulgated a broader, "same conduct" test); *State v. Sanders*, 205 Ariz. 208, ¶ 65, 68 P.3d 434, 448 (App. 2003) ("Th[e] test [under *Dixon*] inquires whether each of two offenses contains an element not contained in the other. If not, they are the same offense and double jeopardy bars successive prosecutions."); *State v. Siddle*, 202 Ariz. 512, ¶ 10, 47 P.3d 1150, 1154 (App. 2002) ("Distinct statutory provisions constitute the same offense if they are comprised of the same elements."). In sum, we cannot find the indictment duplicitous based on double jeopardy concerns when Ramsey has not clearly articulated any specific scenario in which the indictment's single charge under § 13-1417 would "make a precise pleading of prior jeopardy impossible in the event of a later prosecution." *Spencer*, 136 Ariz. at 610, 667 P.2d at 1325.

¶10 Ramsey also argues *Spencer* "is a case exactly on point," "mirror[s] exactly the problems with [his] indictment," and required the state to "charg[e] the three or more predicate offenses [in § 13-1417] separately" and to "prove[] [each] as a mandatory element before [he] could be found guilty of a continuing course of conduct." But Spencer was not charged under § 13-1417. Rather, he was charged with one count each of incest and

7

molestation in violation of A.R.S. §§ 13-1410 and 13-3608. *Spencer*, 136 Ariz. at 609, 667 P.2d at 1324. In that case, "the two charges brought by the grand jury [were] based upon allegations of numerous episodes of sexual misconduct." *Id.* at 610, 667 P.2d at 1325. And the court there stated that "each occurrence of such a prohibited act [was] a separate offense under [that] statute." *Id.; cf. State v. Davis*, 206 Ariz. 377, ¶¶ 59, 60, 79 P.3d 64, 77 (2003) (finding one charge of sexual misconduct with a minor duplicitous when defendant "was convicted of one count, based on proof of two acts," and when court could not "be certain which offense served as the predicate for the conviction").

¶11 In contrast, the indictment against Ramsey did not charge him with separate, individual counts of molestation or incest, but rather, with a single count of continuous sexual abuse of a child in violation of § 13-1417, a statute that had not been enacted when *Spencer* was decided. *See* 1993 Ariz. Sess. Laws, ch. 33, § 2. Therefore, contrary to Ramsey's assertions, we do not find *Spencer* controlling.

¶12 Moreover, as the state points out, "[a] continuing scheme or course of conduct may properly be alleged in a single count." *See State v. Via*, 146 Ariz. 108, 116, 704 P.2d 238, 246 (1985) ("[W]here numerous transactions are merely parts of a larger scheme, a single count encompassing the entire scheme is proper."). And an indictment is not rendered duplicitous merely because "one of the elements of the crime alleged is a separately indictable offense." *Whitney*, 159 Ariz. at 480, 768 P.2d at 642.

8

**¶13** Ramsey cites several out-of-state cases for the proposition that § 13-1417 "is not a continuing-course-of-conduct statute because it mandates three or more separate 'violations' of A.R.S. §§ 13-1405, 13-1406 or 13-1410." None of those cases, however, involved a defendant charged, as Ramsey was, under a continuing-course statute. *See Covington v. State*, 703 P.2d 436 (Alaska Ct. App. 1985); *State v. Snook*, 555 A.2d 390 (Conn. 1989); *State v. Petrich*, 683 P.2d 173 (Wash. 1984). Rather, in each case, the state had charged the defendant with individual counts of sexual misconduct "but proceeded at trial to present evidence of numerous separate criminal acts." *Petrich*, 683 P.2d at 177; *see also Davis*, 206 Ariz. 377, ¶¶ 51-52, 79 P.3d at 75-76. In contrast, in this case, the state charged Ramsey with a continuing course of conduct under a statute clearly defining the offense as a continuing course.

**¶14** Ramsey's citation of *State v. Rabago*, 81 P.3d 1151 (Haw. 2003), however, is more apropos. The court there addressed a statute similar to § 13-1417 and concluded that the behavior proscribed does not constitute a continuous course. In so ruling, the court in *Rabago* stated:

> To highlight the distinction between "continuing offenses" and "several distinct acts," we defined a "continuing offense" as "a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an *unintermittent force*, however long a time it may occupy[, or] an offense which continues day by day[, or] a breach of the criminal law, not terminated by a single act or fact, but subsisting for a definite period and intended to cover or apply to successive similar obligations or occurrences."

*Id.* at 1162-63 (alterations and emphasis in *Rabago*), *quoting State v. Arceo*, 928 P.2d 843, 860 (Haw. 1996). And, the court stated,

> "[t]he test to determine whether [a] defendant intended to commit more than one offense in the course of a criminal episode is whether the evidence discloses one general intent or discloses *separate and distinct intents*. If there is but one intention, one general impulse, and one plan, there is but one offense."

*Id.* at 1163 (emphasis in *Rabago*), *quoting Arceo*, 928 P.2d at 860. According to the *Rabago* court,

> [t]he conduct element requisite to [Hawaii's statute on continuous sexual assault of a minor], *i.e.*, "three or more acts of sexual penetration or sexual contact," when combined with the attendant circumstance of "over a period of time," . . . necessarily entails multiple impulses and the operation of intermittent forces and thus deviates from the construct of "continuing offenses" adopted by this court in *Arceo*.

*Id.* at 1167, *quoting* Haw. Rev. Stat. § 707-733.5. We, of course, are not bound by *Rabago* and question the underlying premise for its conclusion.[4] But, even if we were to adopt its definition of a continuous course of conduct, we would, unlike the Hawaii court, conclude that the conduct § 13-1417 prohibits clearly fits within that definition.

**¶15** Although § 13-1417 requires three or more separate acts to constitute a continuing course, under Arizona law, as noted above, an indictment is not duplicitous merely because the elements of a charge may also be separately indicted. *Whitney*, 159 Ariz.

---

[4] *See State v. Cameron*, 185 Ariz. 467, 469, 916 P.2d 1183, 1185 (App. 1996) (Arizona courts are not bound by decisions from other jurisdictions).

10

at 480, 768 P.2d at 642. And a continuing scheme may be charged under one count. *Via*, 146 Ariz. at 116, 704 P.2d at 246. Thus, that the state could have charged Ramsey with separate counts of sexual conduct with a minor in violation of § 13-1405, sexual assault in violation of § 13-1406, or child molestation in violation of § 13-1410 does not preclude or undermine the jury's conclusion that Ramsey's ongoing molestation of his daughter constituted a continuing scheme. Although we disagree with *Rabago*'s conclusion, the record here supports a finding that Ramsey's actions, in the words of that court, had been driven by "'one intention, one general impulse, and one plan'"—to molest his daughter. *Rabago*, 81 P.3d at 1163, *quoting Arceo*, 928 P.2d at 860. Because Ramsey's acts constituted a continuous course of conduct under § 13-1417, they could be properly charged in one count. Therefore, the trial court did not err in denying Ramsey's motion to dismiss the indictment on the ground it was duplicitous.

## II. Jury unanimity

¶16 Ramsey next argues § 13-1417 is unconstitutional because it does not require "a unanimous jury verdict on the three or more predicate violations of A.R.S. §§ 13-1405, 13-1406 and 13-1410 as required by [the] Arizona Constitution." Similarly, he maintains the trial court erred by instructing the jury, in accordance with § 13-1417(C) and over his objection: "The jury must make a unanimous finding that three or more acts occurred. The jury is not required to agree on which acts constitute the three or more acts." Ramsey

11

contends the instruction was a "constitutionally defective jury instruction on the definition of A.R.S. § 13-1417 and the unanimity requirement."

**¶17**  We review the constitutionality of a statute and the propriety of a jury instruction de novo. *State v. Orendain*, 188 Ariz. 54, 56, 932 P.2d 1325, 1327 (1997); *Carrasco*, 201 Ariz. 220, ¶ 10, 33 P.3d at 794. We have a duty, when possible, to construe a statute in a way that renders it constitutional. *State v. Padilla*, 169 Ariz. 70, 71, 817 P.2d 15, 16 (App. 1991). "There is a strong presumption supporting the constitutionality of statutes, and the party challenging the validity of a statute has the burden to establish its invalidity beyond a reasonable doubt." *Id.; see also Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982); *State ex rel. Thomas v. Foreman*, 211 Ariz. 153, ¶ 12, 118 P.3d 1117, 1120 (App. 2005).

**¶18**  Article II, § 23 of the Arizona Constitution provides: "The right of trial by jury shall remain inviolate . . . . In all criminal cases the unanimous consent of the jurors shall be necessary to render a verdict." "The jury [must] unanimously find every element of [a crime] beyond a reasonable doubt." *State v. Peña*, 209 Ariz. 503, ¶ 12, 104 P.3d 873, 876 (App. 2005). But our supreme court has stated, "[a]lthough a defendant is entitled to a unanimous jury verdict on whether the criminal act charged has been committed, the defendant is not entitled to a unanimous verdict on the precise manner in which the act was committed." *State v. Encinas*, 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982) (citation omitted); *see also Griffin v. United States*, 502 U.S. 46, 49-51, 112 S. Ct. 466, 469-70,

12

116 L. Ed. 2d 371, 376-77 (1991); *Schad v. Arizona*, 501 U.S. 624, 629-30, 111 S. Ct. 2491, 2496, 115 L. Ed. 2d 555, 563-64 (1991); *State v. Herrera*, 176 Ariz. 9, 16, 859 P.2d 119, 126 (1993); *Peña*, 209 Ariz. 503, ¶ 12, 104 P.3d at 876.

¶19        Therefore, we must determine whether the "three or more acts in violation of § 13-1405, 13-1406 or 13-1410" required by § 13-1417 constitute elements of the offense or are merely the means by or the manner in which one commits the crime of continuous sexual abuse of a child.  Citing *Richardson v. United States*, 526 U.S. 813, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999), Ramsey argues the "three or more acts" constitute elements of the crime.  We find Ramsey's reliance on *Richardson* for that proposition misplaced.

¶20        In *Richardson*, the Supreme Court held that, in order to convict a defendant under the federal continuing criminal enterprise (CCE) drug statute, 21 U.S.C. § 848, a jury must agree unanimously on the specific, underlying drug code violations that comprise the "continuing criminal enterprise." 526 U.S. at 815, 119 S. Ct. at 1709, 143 L. Ed. 2d at 991 ("That is to say, a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'").  As the state points out, the Court in *Richardson* "was analyzing the federal right to a unanimous jury verdict, pursuant to the Due Process Clause, on each element of the crime under the United States Constitution." *See* 526 U.S. at 817, 119 S. Ct. at 1710, 143 L. Ed. 2d at 992.  In addition, the Court noted that, in state cases, it "ha[d] not

13

held that the [federal] Constitution imposes a jury-unanimity requirement." *Id.* at 821, 119 S. Ct. at 1712, 143 L. Ed. 2d at 995; *see also State v. Bishop*, 144 Ariz. 521, 523 n.4, 698 P.2d 1240, 1242 n.4 (1985) ("Jury unanimity is a federal constitutional right not extended to the states through the doctrine of selected incorporation of the fourteenth amendment.").

¶21         In view of Arizona's own constitutional requirement of jury unanimity in criminal cases, however, we look to *Richardson* for helpful guidance in determining whether § 13-1417 violates article II, § 23 of the Arizona Constitution. *See State v. Transon*, 186 Ariz. 482, 485, 924 P.2d 486, 489 (App. 1996) (when "the language of the federal and state constitutional provisions [is] substantially similar, we will use the same standard to analyze both provisions"). The Court in *Richardson* framed the issue as

> whether the [federal CCE] statute's phrase "series of violations" refers to one element, namely a "series," in respect to which the "violations" constitute the underlying brute facts or means, or whether those words create several elements, namely the several "violations," in respect to *each* of which the jury must agree unanimously and separately.

526 U.S. at 817-18, 119 S. Ct. at 1710, 143 L. Ed. 2d at 992. In resolving that issue, the Court markedly differentiated "brute facts" from "elements," noting that "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.* at 817, 119 S. Ct. at 1710, 143 L. Ed. 2d at 992. As the Court stated:

If the statute creates a single element, a "series," in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three. On the other hand, if the statute makes each "violation" a separate element, then the jury must agree unanimously about which three crimes the defendant committed.

*Id*. at 818, 119 S. Ct. at 1710, 143 L. Ed. 2d at 992-93.

¶22 Because the federal CCE statute "does not explicitly [reveal] whether the individual violation is an element or a means," *id*., the Court engaged in a statutory interpretation analysis and concluded that Congress had intended each violation to be treated as an element of the offense. *Id*. at 818-19, 119 S. Ct. at 1710-11, 143 L. Ed. 2d at 993. The Court also addressed the "statute's breadth," noting that "[t]he statute's word 'violations' covers many different kinds of behavior of varying degrees of seriousness" and could encompass "drug crimes contain[ed in] approximately 90 numbered [Federal Criminal Code] sections, many of which proscribe various acts that may be alleged as 'violations' for purposes of the series requirement in the statute." *Id*. at 819, 119 S. Ct. at 1711, 143 L. Ed. 2d at 993. Those considerations, including the statutory language and its "potential unfairness," *id*. at 820, 119 S. Ct. at 1711, 143 L. Ed. 2d at 994, led the Court "to conclude that the statute requires jury unanimity in respect to each individual 'violation.'" *Id*. at 824, 119 S. Ct. at 1713, 143 L. Ed. 2d at 997.

¶23 Employing *Richardson*'s analysis here leads us to uphold, not invalidate, § 13-1417. Unlike *Richardson*, this case does not involve statutory "language [that] may

15

seem to permit [different] interpretation[s]" on the jury-unanimity question. *Id*. at 818, 119 S. Ct. at 1710, 143 L. Ed. 2d at 993. Section 13-1417(C) clearly states: "To convict a person of continuous sexual abuse of a child, the trier of fact shall unanimously agree that the requisite number of acts occurred. The trier of fact does not need to agree on which acts constitute the requisite number." Thus, in contrast to the federal CCE statute, § 13-1417 "does . . . explicitly tell us whether the individual violation is an element or a means." *Richardson*, 526 U.S. at 818, 119 S. Ct. at 1710, 143 L. Ed. 2d at 993; *see State v. Johnson*, 627 N.W.2d 455, ¶ 14 (Wis. 2001) (noting that, unlike the CCE statute at issue in *Richardson*, Wisconsin's statute "is unambiguous as to the elements of the offense and the question of what the jury must be unanimous about before convicting a defendant of repeated sexual assault of the same child").

¶24        In other words, under § 13-1417(C), the specific, individual "acts [that] constitute the requisite number" of predicate acts for purposes of § 13-1417(A) clearly "constitute the underlying brute facts or means" rather than "elements" of the crime on which "the jury must agree unanimously and separately." *Richardson*, 526 U.S. at 817-18, 119 S. Ct. at 1710, 143 L. Ed. 2d at 992. Section 13-1417 singularly prohibits "continuous sexual abuse of a child" and, therefore, essentially "creates a single element, a 'series,' in respect to which individual violations are but the means." 526 U.S. at 818, 119 S. Ct. at 1710, 143 L. Ed. 2d at 992. Accordingly, in prosecutions under § 13-1417, "the jury need

16

only agree that the defendant committed at least three of all the underlying crimes the [state] has tried to prove." 526 U.S. at 818, 119 S. Ct. at 1710, 143 L. Ed. 2d at 992.

¶25        In addition, § 13-1417 does not give rise to the same types of concerns about statutory "breadth" and "dangers of unfairness" as were expressed in *Richardson*. *Id*. at 819, 119 S. Ct. at 1711, 143 L. Ed. 2d at 993. "In *Richardson* there was insufficient moral equivalence and conceptual similiarity in the 90 or so predicate drug crimes included within the ambit of the CCE to sustain an interpretation of the statute that would permit nonunanimity on the predicate acts." *Johnson*, 627 N.W.2d 455, ¶ 26. By contrast, the predicate acts in § 13-1417(A) "are sufficiently equivalent to justify the legislature's decision to dispense with unanimity on the predicate acts." 627 N.W.2d 455, ¶ 26. Simply stated, "the risk of unfairness in dispensing with unanimity on the predicate acts under [§ 13-1417] is not present as it was in *Richardson*." 627 N.W.2d 455, ¶ 26; *see also id.* ¶ 18 ("Lack of jury unanimity regarding the specific acts constituting the required minimum of three raises no concern about fundamental fairness under these circumstances.").

¶26        In sum, *Richardson* is not only distinguishable from this case but also compatible with our conclusion that § 13-1417 does not violate the Arizona constitutional requirement of jury unanimity. Moreover, and significantly, the Court in *Richardson* distinguished "state statutes making criminal such crimes as sexual abuse of a minor." 526 U.S. at 821, 119 S. Ct. at 1712, 143 L. Ed. 2d at 995. Citing *People v. Gear*, 23 Cal. Rptr. 2d 261 (Ct. App. 1993), and other state cases, the Court recognized that "[s]tate courts

17

interpreting such statutes [as § 13-1417] have sometimes permitted jury disagreement about a specific underlying criminal incident, insisting only upon proof of a continuous course of conduct in violation of the law." 526 U.S. at 821, 119 S. Ct. at 1712, 143 L. Ed. 2d at 995. In such cases, the Court noted, "[t]he state practice may well respond to special difficulties of proving individual underlying criminal acts." *Id.; see also State v. Sleeper*, 846 A.2d 545, 550 (N.H. 2004) ("[P]attern sexual assault statutes 'respond to special difficulties' and are unique."), *quoting Richardson*, 526 U.S. at 821, 119 S. Ct. at 1712, 143 L. Ed. 2d at 995; Jeffrey A. Sandquist, *Continuous Child Sexual Abuse*, 26 Ariz. St. L.J. 317, 318 (1994) ("Because of the duration of time over which the predicate offenses may occur and the regularity and frequency of the offenses, the victim often cannot distinguish the events of each offense."). Those special difficulties, as well as the absence of various fairness concerns the *Richardson* Court cited, distinguish that case from this.

¶27 In addition, the language of § 13-1417 itself suggests that the requisite three acts do not constitute elements of the offense. The statute does not criminalize the underlying acts, but rather, incorporates the other statutes merely to define the acts that make up the continuous course of sexual abuse prohibited by § 13-1417. *See Gear*, 23 Cal. Rptr. 2d at 266 ("'The continuous-course-of-conduct crime does not require jury unanimity on a specific act, because it is not the specific act that is criminalized.'"), *quoting People v. Jones*, 792 P.2d 643, 663-64 (Cal. 1990) (Mosk, J., dissenting).

¶28 Thus, the actus reus of § 13-1417 is the pattern of sexual assaults—the continuous course of conduct—rather than each individual act, which would constitute a violation of one of the cited statutes if so charged.[5] *See Johnson*, 627 N.W. 2d 455, ¶¶ 14-15; *see also Gear*, 23 Cal. Rptr. 2d at 266 ("[T]he *actus reus* of the crime is the course of conduct encompassing the individual acts of sexual conduct."); *Sleeper*, 846 A.2d at 548 (in cases involving a continuous course of conduct, "the *actus reus* is a series of acts occurring over a substantial period of time, generally on the same victim and generally resulting in cumulative injury"). Section 13-1417 properly requires jury unanimity on its elements—a continuous course of sexual abuse as demonstrated by three or more acts in violation of one or more of the statutes referred to therein, over a period of three or more months. The jurors need not agree on which three acts constitute the course of conduct, as long as they unanimously agree that the defendant committed the requisite three acts. *See Gear*, 23 Cal. Rptr. 2d at 266; *Sleeper*, 846 A.2d at 548; *but see State v. Rabago*, 81 P.3d 1151, 1168 (Haw. 2003) (holding that multiple sexual acts against a child "are, by nature,

---

[5]Our primary purpose in interpreting statutes is to discern the legislature's intent. *State v. Moerman*, 182 Ariz. 255, 260, 895 P.2d 1018, 1023 (App. 1994). In enacting A.R.S. § 13-1417, the Arizona legislature clearly sought to criminalize a continuous course of conduct rather than specific acts. *See* Continuous Child Sexual Abuse: Minutes from Hearing on S.B. 1028 before the House Comm. on Judiciary, 41st Leg., 1st Reg. Sess. (Mar. 11, 1993); Ariz. H.R. B. Summ., 1993 Reg. Sess. S.B. 1028, 1993. Because the language of § 13-1417 is clear, however, we need not probe its legislative history. *See State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997); *see also State v. Sepahi*, 206 Ariz. 321, ¶¶ 15-16, 78 P.3d 732, 735 (2003) (courts may not "amend[] [a] statute to require proof of elements not set forth by the legislature," and "[i]n the end, a statute's language is the most reliable index of its meaning").

separate and discrete and therefore may not form the basis of a 'continuing offense'" and that jury must unanimously find beyond a reasonable doubt which specific, predicate acts constituted the crime).

¶29 Ramsey's constitutional challenges to § 13-1417 mirror those made to Wisconsin's similar statute in *Johnson*. In finding the Wisconsin statute "not unconstitutional on unanimous verdict or due process grounds," 627 N.W.2d 455, ¶ 27, the court in *Johnson* aptly stated:

> It is clear from this [statutory] language that the predicate acts of sexual assault are not themselves elements of the offense, about which the jury must be unanimous before convicting the defendant. Rather, to convict under this statute, the jury need only unanimously agree that the defendant committed at least three acts of sexual assault of the same child within the specified time period. Where evidence of more than three acts is admitted, the jury need not unanimously agree about the underlying acts as long as it unanimously agrees that the defendant committed at least three.
>
> In other words, it is the *course* of sexually assaultive conduct that constitutes the primary element of this offense, about which the jury must be unanimous . . . . Unanimity is explicitly *not* required regarding the individual acts of sexual assault.
>
> . . . .
>
> After all, the violations of the law about which the jury need not be unanimous under this statutory scheme all involve the sexual abuse of children, crimes of the same or similar nature and level of culpability. It is therefore not unfair or irrational to lift the requirement of jury unanimity as to the specific underlying acts as long as unanimity is required

20

> regarding the existence of the course of conduct, defined as at least three acts of sexual assault of the same child.

*Id.* ¶¶ 15, 16, 19. We agree with *Johnson*'s analysis and conclusions, which apply equally to § 13-1417.

**¶30**      In sum, Ramsey has not met his burden of proving beyond a reasonable doubt that § 13-1417 is unconstitutional.[6] *See State v. Padilla*, 169 Ariz. 70, 71, 817 P.2d 15, 16 (App. 1991); *cf. State v. Tocco*, 156 Ariz. 116, 119-20, 750 P.2d 874, 877-78 (1988) (upholding against vagueness challenge statutory definition of "criminal syndicate" in former A.R.S. § 13-2301(C)(2), now (C)(4), in connection with criminalization of continuous course of conduct in A.R.S. § 13-2308). And, because the trial court properly stated the law, we find no error in the jury instructions it gave. *See State v. Sucharew*, 205 Ariz. 16,

---

[6]Ramsey also contends generally, without supporting argument, that A.R.S. § 13-1417 and the trial court's denial of a unanimity jury instruction for the three or more predicate violations of A.R.S. §§ 13-1405, 13-1406, or 13-1410 violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and article II, § 4 of the Arizona Constitution. Ramsey has waived any due process issues, however, by failing to raise them below. *See State v. Spreitz*, 190 Ariz. 129, 145, 945 P.2d 1260, 1276 (1997). And he has not argued, much less carried his burden to establish, fundamental error on those claims. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). But, even had Ramsey preserved the argument, we agree with those courts that have rejected due process challenges to similar continuous-course statutes such as § 13-1417. *See People v. Gear*, 23 Cal. Rptr. 2d 261, 267-68 (Ct. App. 1993); *State v. Sleeper*, 846 A.2d 545, 550-51 (N.H. 2004); *State v. Johnson*, 627 N.W.2d 455, ¶¶ 22-28 (Wis. 2001); *but see State v. Rabago*, 81 P.3d 1151, 1169 (Haw. 2003) (finding Hawaii's continuous-course statute "unconstitutional violation of a defendant's right to due process of law").

¶ 33, 66 P.3d 59, 69 (App. 2003) (appellate court will not reverse conviction unless jury instructions incorrectly stated law or would have misled jurors).

### III.  Evidence of incestuous stories

¶31        Ramsey also contends he was "denied a fair trial because the court admitted highly prejudicial evidence that was not relevant or admissible under Rule 404(b) or Rule 404(c)," Ariz. R. Evid., 17A A.R.S.  Two incestuous stories were admitted at trial—one handwritten and the other a computer-generated print-out taken from the binder of printed stories found at Ramsey's residence.  In questioning prospective jurors during voir dire, defense counsel read a portion of another sexually explicit story in an attempt, according to Ramsey, "to innoculate the jury."  A vibrator and bottle of lubricant that Ramsey had given A. also were admitted.  We review a trial court's ruling on the admissibility of evidence for a clear abuse of discretion.  *State v. Tankersley*, 191 Ariz. 359, ¶ 37, 956 P.2d 486, 496 (1998).

¶32        Much of Ramsey's argument centers on the trial court's rulings on the admissibility of evidence in a previous case against him, CR-20013448.  He maintains that "[t]he trial court did not reach its ruling based solely on the proceedings" in this case and that "the court must consider the entire history on the [evidentiary] issues" because "[t]he two cases are inherently related."  But Ramsey does not cite any law for that proposition, nor are we aware of any.  Because a trial court's evidentiary rulings result from its exercise of discretion in a particular case, that certain evidence was not admitted in an entirely

22

separate trial did not preclude it from being admitted at trial in this case. *See State v. Davolt*, 207 Ariz. 191, ¶ 60, 84 P.3d 456, 473 (2004); *cf. Jiminez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, ¶ 12, 79 P.3d 673, 676 (App. 2003) (on retrial, parties may "'make new motions, raise new objections, and present additional evidence'"), *quoting United States v. Thom*, 960 F.2d 1391, 1397 n.3 (9th Cir. 1991). And, as the state points out, Ramsey had "a full opportunity to raise and brief issues regarding his trial" in the prior case, and any issues relating to that trial were addressed in our decision in that appeal. *See State v. Ramsey*, No. 2 CA-CR 2003-0367 (memorandum decision filed Aug. 31, 2005).

**¶33** Accordingly, irrespective of evidentiary rulings in a different case, we consider whether the trial court abused its discretion in admitting the stories, vibrator, and lubricant in this case. Relevant evidence generally is admissible unless it is otherwise precluded by "the Constitution of the United States, by the Constitution of Arizona or by applicable statutes or rules." Ariz. R. Evid. 402, 17A A.R.S. Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401.

**¶34** Citing his expert's testimony, Ramsey argues the stories were irrelevant because "there is no correlation between molests and possession of pornography." Although the expert testified that an interest in pornography does not "establish a causal relationship" with the propensity to commit child molestation, he also testified that "it is a link." And he

23

stated that he could not "testify to [Ramsey's] specific pattern because there [was not] literature on [him] as an individual." Thus, contrary to Ramsey's assertions, the expert's testimony did not show that possession of incestuous pornography is irrelevant to a person's propensity to commit sexual crimes against a child. We agree with the state that the pornographic material was relevant to Ramsey's "intent and motive to have a sexual relationship with [A.]." *See* Ariz. R. Evid. 404(b). Likewise, the material and the lubricant and vibrator were probative of A.'s credibility and supported her testimony that Ramsey had read one of the stories to her.

¶35 Although the state relied on Rule 404(b), the trial court also admitted the stories under Rule 404(c), which allows admission of other act evidence "if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Under Rule 404(c)(1), however, the court must first specifically find the following:

> (A) The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.

> (B) The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.

> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403.

The trial court made specific findings on each of those points, and the evidence supports each of those findings. We need not address Ramsey's unsupported argument that the court "was without authority or jurisdiction" to render a ruling under Rule 404(c) because the state had not sought to admit the evidence under that rule. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi). The trial court did not abuse its discretion in finding the evidence admissible under Rule 404(c).

¶36 Relevant evidence, however, may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Ariz. R. Evid. 403. Ramsey argues that "[a]ny probative value of . . . these items was substantially outweighed by the danger of unfair prejudice." He also maintains "the court established the stories [were] unfairly prejudicial" in his previous trial. As discussed above, however, we evaluate the evidentiary rulings in this case separately and without regard to rulings in Ramsey's prior case. And, viewing "the evidence in the light most favorable to its proponent," as we must, we cannot say the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. *State v. Castro*, 163 Ariz. 465, 473, 788 P.2d 1216, 1224 (App. 1989). In sum, we find no abuse of discretion in the trial court's evidentiary rulings. *See Tankersley*, 191 Ariz. 359, ¶ 37, 956 P.2d at 496.

## IV. Motion for change of judge

¶37     Ramsey argues he "was denied a fair trial because of the bias of the judge." In July 2003, before trial, Ramsey moved for a change of judge for cause pursuant to Rule 10.1, Ariz. R. Crim. P., 16A A.R.S.  A different judge denied that motion as untimely. Later, at trial, Ramsey objected to A.'s reading from a transcript after she had said her memory had been refreshed by it.  A bench conference ensued, during which the following exchange took place:

> THE COURT: All right, we're dealing with a child victim who's obviously very nervous about her testimony and about events that happened a long time ago.  If she looks at the transcript and indicates it refreshes her memory and has to glance down to help her with her testimony, I'm going to allow her to do that, but I'll allow it with you, too.  I think that's the only way to do it because of the difficulty any child witness who's testifying against her father in a child sexual abuse case—
>
> [DEFENSE COUNSEL]:  Well, I understand what you're saying.  Obviously I accept the ruling.  Two things, though, one is you are assuming she is a victim and we don't know that.
>
> THE COURT:  Well, based upon having sat through her testimony previous times, yes, you're correct, I'm assuming that.

Alleging judicial bias, Ramsey moved for a mistrial and change of judge.  The trial court denied the motion.  Ramsey now claims the court's "slip of the tongue" reference to A. as a "victim" during the bench conference "clearly establishes that the trial judge had formed a predisposition or opinion that [Ramsey] was guilty of a criminal act . . . sometime prior to or during [his] trial."  We review a trial court's ruling on claims of judicial bias for an abuse of discretion.  *State v. Schackart*, 190 Ariz. 238, 257, 947 P.2d 315, 334 (1997).

26

¶38        "A trial judge is presumed to be free of bias and prejudice," and a defendant must show by a preponderance of the evidence that the trial judge was, in fact, biased. *State v. Hurley*, 197 Ariz. 400, ¶ 24, 4 P.3d 455, 459 (App. 2000).  Ramsey has not produced sufficient evidence to rebut this presumption of judicial impartiality.

> "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*State v. Henry*, 189 Ariz. 542, 546, 944 P.2d 57, 61 (1997), *quoting Liteky v. United States*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474, 491 (1994).  The trial court's statement that A. was a victim was based not only on testimony to that effect in the prior trial, over which the same judge had presided, but also on Ramsey's conviction in that very case for furnishing obscene or harmful items to A. *Ramsey*, No. 2 CA-CR 2003-0367.  Thus, the court's reference to A. as a victim was well grounded and did not necessarily demonstrate bias.  Because Ramsey failed to meet his burden of showing prejudice, *see Hurley*, 197 Ariz. 400, ¶ 24, 4 P.3d at 459, the trial court did not abuse its discretion in denying his motion for a change of judge or his motion for a mistrial based on judicial bias.

## V.  Motion for judgment of acquittal

¶39        Ramsey also argues the trial court erred "by denying [his] Rule 20[, Ariz. R. Crim. P., 17 A.R.S.,] motion for judgment of acquittal."  According to Ramsey, although

27

§ 13-1417 defines continuous sexual abuse as "engag[ing] in three or more acts in violation of § 13-1405, 13-1406 or 13-1410" over a period of three months or more, "[t]he State had only shown two instances of alleged sexual contact, one of which was outside the indictment period." And, he maintains, the state "failed to prove a time period of three months or more."

¶40        In reviewing a trial court's ruling on a motion for judgment of acquittal, "we view the evidence in the light most favorable to supporting the verdict and will reverse only if there is a complete absence of 'substantial evidence' to support the conviction." *State v. Sullivan*, 187 Ariz. 599, 603, 931 P.2d 1109, 1113 (App. 1996), *quoting* Ariz. R. Crim. P. 20. Substantial evidence is evidence that reasonable jurors "could accept as sufficient to support a guilty verdict beyond a reasonable doubt." *State v. Davolt*, 207 Ariz. 191, ¶ 87, 84 P.3d 456, 477 (2004). We consider evidence substantial if reasonable persons could differ on whether it establishes a fact in issue. *Id.*

¶41        At trial, A. testified that the first time Ramsey had touched her breasts or vagina was while the family lived in the first or second house in a certain subdivision. S. testified that the family had moved into the first house in that subdivision in March 1999 and had lived there until November 1999. Ramsey testified he had sprained his ankle in April 1999 and, as a result, had not slept in the couple's bed, where A. alleged most of the abuse had occurred, from then until approximately July 7. Ramsey and S. separated in November 1999, and during the period of separation, he did not sexually abuse A. But, when the

28

couple reunited in May or June of 2000, Ramsey continued to touch A.'s vaginal area. The family moved into the second home in the subdivision in June 2000 and lived there until January 2001. Thus, contrary to Ramsey's assertions, the state presented evidence of two separate time periods longer than three months when Ramsey was at home and apparently sleeping in the bed where A. testified the touching had occurred.

¶42 Additionally, A. testified that, while the family had lived in the subdivision, the touching had occurred "over and over again." A. also described how she had gone into her parents' bedroom when she had nightmares. A. and S. testified those nightmares had occurred approximately once a week over a period of a year and a half, but A. also acknowledged that she had told detectives she had had the nightmares from ages "eight to twelve." A. testified that, while she was in her parents' bed, her father would touch her vagina, breasts, and buttocks. And, of the many times she had gone into their bedroom, A. said there was only "once that it didn't happen." A. also testified about a specific incident in which Ramsey had put his finger in her vagina while the family lived in the subdivision.

¶43 As explained above, the jury was not required to unanimously agree which three acts constituted the underlying acts required by § 13-1417. *See* ¶¶ 16-30, *supra*. Therefore, the jury could have relied on A.'s testimony that her father had touched her breasts and vagina "over and over" to find that Ramsey had committed three or more acts as required by the statute. Because reasonable minds could differ on whether this evidence

29

established the time span and number of incidents, we find it was substantial. *See Davolt*, 207 Ariz. 191, ¶ 87, 84 P.3d at 477.

**¶44** Citing *People v. Jones*, 792 P.2d 643 (Cal. 1990), Ramsey argues that A.'s testimony was "broadly generic" and that "certain factors [that] must be present" were not. But, in *Jones*, the court stated: "Does the victim's failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not." *Id.* at 655. The court held that a child must describe the kinds of acts committed, the number of acts ("e.g., 'twice a month' or 'every time we went camping'"), and the general time period. *Id.* Thus, even if we were bound or persuaded by *Jones*, A.'s testimony clearly met its standard. In sum, because the record contains substantial evidence to support Ramsey's conviction, we find no error in the trial court's denial of his motion for a judgment of acquittal. *See Sullivan*, 187 Ariz. at 603, 931 P.2d at 1113.

## VI. Sentencing issues

**¶45** Ramsey lastly argues the trial court "violated the holding of *Blakely v. Washington*[, 542 U.S. 296, 124 S. Ct. 2531 (2004)]," by considering aggravating factors in sentencing him. The court, however, sentenced Ramsey to a presumptive, twenty-year prison term. *See* A.R.S. § 13-604.01(C). As this court stated in *State v. Johnson*, 210 Ariz. 438, ¶ 12, 111 P.3d 1038, 1042 (App. 2005), "no constitutional violation occurs if the ultimate sentence falls within the range authorized by the jury verdict alone." "[U]nder Arizona law, the statutory maximum sentence for [*Blakely*] purposes in a case in which no

30

aggravating factors have been proved to a jury beyond a reasonable doubt is the presumptive sentence." *State v. Martinez*, 210 Ariz. 578, ¶ 17, 115 P.3d 618, 623 (2005); *see also* A.R.S. §§ 13-701(C), 13-702(A); *State v. Brown*, 209 Ariz. 200, ¶ 12, 99 P.3d 15, 18 (2004). Thus, because the trial court imposed a presumptive term, which does not exceed the statutory maximum, it did not violate Ramsey's Sixth Amendment rights under *Blakely*.[7] *See Johnson*, 210 Ariz. 438, ¶ 10, 111 P.3d at 1041; *State v. Miranda-Cabrera*, 209 Ariz. 220, ¶ 32, 99 P.3d 35, 42 (App. 2004).

**DISPOSITION**

**¶46**       Ramsey's conviction and sentence are affirmed.

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Presiding Judge

---

[7]Citing *State v. Hardwick*, 183 Ariz. 649, 656-57, 905 P.2d 1384, 1391-92 (App. 1995), Ramsey also argues the trial court violated his constitutional rights by citing his lack of remorse as an aggravating factor. In view of the number of additional aggravating factors the trial court cited and the court's imposition of a presumptive sentence, "the record clearly shows the trial court would have reached the same result even without consideration of the [arguably] improper factor[]." *State v. Ojeda*, 159 Ariz. 560, 562, 769 P.2d 1006, 1008 (1989). Therefore, Ramsey has not established a basis for overturning his sentence.

_____
PETER J. ECKERSTROM, Judge